**STATE of Missouri, Respondent,**

v.

**James A. CIARELLI, Appellant.**

**No. 52325.**

Supreme Court of Missouri, Division No. 1.

July 10, 1967.

Norman H. Anderson, Atty. Gen., Jefferson City, Frank P. Motherway, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Robert M. Hickman, Kansas City, for appellant.

SEILER, Judge.

Defendant was convicted of receiving stolen property, specifically sixteen new Spalding golf clubs belonging to the Tomahawk Hills Country Club, and was sentenced by the court under the second offender's act to ten years' imprisonment.

Defendant's sole contention is that the trial court erred in overruling defendant's motion to suppress production in evidence of the golf clubs, for the reason that the clubs were obtained by unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments and not as an incident of a lawful arrest.

The state proved by two convicts that on January 8, 1965, they broke into the Tomahawk Hills Country Club in Johnson County, Kansas, and stole the golf clubs in question, together with golf bags, shoes and balls, and sweaters and T-shirts. They took the loot to Kansas City, Missouri, where defendant and one Junior Bradley purchased the same from the two convicts knowing it to be stolen.

Meanwhile an investigator with the federal Alcohol and Tobacco Tax Unit, Gene Overturf, was in an "after hours" club, one which is opened after the regular taverns are closed, called "Southside Club of Kansas City, Incorporated", located at 3807–09 Broadway, Kansas City, Missouri, on nine occasions as an undercover agent, commencing October 18, 1964, investigating alcohol tax violations. On each occasion Overturf was there defendant Ciarelli was in charge and carrying on the business of selling liquor. The club was located in an old store building with one large room with two street entrances and two smaller rooms in the back, one containing frozen food lockers and the other room, which we will refer to as the "locker room", containing lockers of the club members. Overturf testified that on occasions defendant would bring whiskey out of the locker room, after unlocking the door with keys obtained from a counter near the door. On the night of January 16, 1965, Ciarelli sold Overturf a pint of whiskey which Ciarelli obtained from the locker room. The club was a corporation and apparently had 100 to 200 members. Ciarelli was an employee in charge of the club but was not an incorporator or a member of the board of directors. Overturf never saw anyone other than Ciarelli enter the locker room.

On January 16, 1965, Overturf filed a complaint for violation of U.S.C. Title 26, Section 5691, before the United States Commissioner at Kansas City, swearing that on or about December 19, 1964, defendant Ciarelli unlawfully carried on the business of selling retail liquor and willfully failed to pay the special tax as required by law, based on Overturf's personal knowledge, and on this the Commissioner issued a warrant of arrest for defendant.

About 2:30 a. m., January 17, 1965, Overturf and another Alcohol and Tax Unit investigator, together with two men from the United States Marshal's office, and approximately six or seven men from the Kansas City police force, went to the club premises, entered, and the federal marshals immediately put defendant under arrest on the authority of the federal arrest warrants. The Alcohol Tax men then started interviewing club patrons and also started a search for alcoholic beverages. The door to the locker room was locked. One of the investigators asked defendant if he had the keys to the room; defendant said he did and handed the keys to the witness. Upon opening the door, the Alcohol Tax investigator saw numerous lockers in the room and "quite a bit of merchandise", including golf clubs. So the investigator called one of the men from the Kansas City police force, Detective Lieutenant Hitchcock, to the door and showed him the merchandise. It all appeared to be new, and the investigator suspected it was stolen. Lieutenant Hitchcock then entered the locker room and took charge of the property. The investigator said it was the practice of federal agents to take municipal officers with them on arrests of the nature here involved, and Hitchcock testified he had been assigned by his chief of detectives to assist the federal men in the arrest.

Lieutenant Hitchcock said the door to the locker room was open when he entered. He observed golf clubs, tied in two bundles on a couch, partly covered with a blanket with the shafts protruding and with the stickers and price tags still on the clubs. He had had reports of recent burglaries of golf shops in the area, and since these clubs were new with the price tags on them, he strongly suspected they were stolen. The two bundles of golf clubs, Exhibits 1 and 2, were positively identified by the golf pro-

fessional and the Spalding salesman by registered numbers and model numbers as the golf clubs which were sold to the Tomahawk Hills Country Club and stolen in the burglary of January 8, 1965.

Lieutenant Hitchcock seized the golf clubs and other articles also in sight in the locker room, namely, new clothing piled on a nearby chair—three suits, four pairs of trousers, three sport jackets, 22 pairs of men's gloves and a shirt, together with a portable television set, a stereo set, golf balls, golf club covers and ten stereo records (all the foregoing appeared to be new and unused) and a .38 Colt revolver and a pair of bolt cutters.

Defendant offered no evidence.

Since we have concluded there was not an unreasonable search and seizure here, as discussed below, we will assume without deciding that defendant did not consent to the search and seizure and that defendant has standing to question the same. See annotation, 9 A.L.R.3rd 858,—Search—Consent While in Custody, and Volume 1965, Wash.Univ.L.Quar. 488, Standing to Object to an Unlawful Search and Seizure.

Although the evidence shows that on previous occasions when the federal undercover agents were on the premises defendant was engaged in the business of selling liquor at retail (for example, the agents made purchases from him and saw him get liquor for others), the record is silent as to any activity in the club on the occasion of the arrest in the early morning hours of January 17, 1965. On that occasion the agents entered, made the arrest and started their search. There is no evidence as to what defendant or others on the premises were doing when the officers arrived. So if the search and seizure were valid it must rest on something other than what the officers observed upon arrival. This is brought into sharper focus by the realization that the federal officers could easily have obtained a search warrant under Rule 41 of the Federal Rules of Criminal Procedure to search the premises for liquor (which is what the federal agents were searching for after the arrest), but it would have been on the basis of what they had observed from October 18, 1964 to January 16, 1965. In fact, it is hard to understand why they failed to take this additional step and thereby avoid the needless risk of having their work spoiled by a possibly successful claim of unreasonable search and seizure.

However, the following factors are present in this case:[1]

(1) There was an actual, technical and complete arrest of defendant by the federal officers, as found by the trial court in overruling the motion to suppress, with which finding we agree.

(2) The arrest preceded the search, another finding made by the trial court and with which we agree.

(3) The trial court found that defendant's arrest by the federal officers was lawful, with which we agree.

(4) The trial court found that the arrest was made in good faith and not for the sole purpose of creating an excuse to search. This finding is amply supported by the evidence, and we believe the trial court was correct in its finding.

(5) The trial court found that the search was bona fide for articles connected with the arrest, taking into consideration the fact that the federal statute, Title 26, Section 5691, prohibits the carrying on of the business of retail dealer of liquor, so that liquor on the premises in the portions thereof under the control of defendant (who had the keys to the locked room where the agents were searching for liquor) would be a search for articles which were directly connected with the arrest made on a warrant issued under a complaint charging defend-

---

1. See Scurlock, Searches and Seizures in Missouri, 29 U. of K. C. Law Review 242, 281–283.

ant with unlawfully carrying on the business of a retail liquor dealer without paying the special tax required by law.[2] There is nothing in the evidence to indicate that the search by the federal officers was merely exploratory for anything that could be found.

█ The cases, both state and federal, make it clear that under the above circumstances the officers, following the arrest, may reasonably search not only where the arrest occurs but the other rooms under the defendant's control, State v. Vollmar, (Mo. Sup.) 389 S.W.2d 20; State v. Carenza, 357 Mo. 1172, 212 S.W.2d 743; State v. Turner, 302 Mo. 660, 259 S.W. 427; State v. Long, 336 Mo. 630, 80 S.W.2d 154; Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668; Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399; United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231; annotation, Search Incident to Arrest, 4 L.Ed.2d 1982–95.

█ Once it is determined that the search which resulted in the opening of the door of the locker room was lawful, there is no question but that the resulting seizure by the Kansas City police of the golf clubs was lawful. The golf clubs still had the price tags on them and were obviously new. Lieutenant Hitchcock was aware that there had been some recent burglaries of golf shops in the Kansas City area. While it was not conclusively known at the moment that the golf clubs were stolen property, it was a reasonable surmise that they were, and the police officers might well be remiss if they had not seized the property, because

there was no assurance it would not disappear before their return if they left it there and took the time required to trace its ownership specifically before seizing it. In State v. Robinson, 354 Mo. 74, 188 S.W.2d 664, 666, the court held that where officers were legally on defendant's premises searching for illicit liquor and equipment and came across stolen property on the premises, the officers had the right to seize the stolen property, the court saying: "* * * Possession of the stolen property was unlawful per se. It was therefore contraband and subject to seizure when discovered by the officers legally on the premises. * * *" It was said in Boyd v. United States, 116 U.S. 616, 623, 6 S.Ct. 524, 528, 29 L.Ed. 746, 748, that the seizure of stolen goods was authorized at common law, and in Warden, Maryland Penitentiary v. Hayden, 386 U.S. ——, 87 S.Ct. 1642, 18 L.Ed.2d 782, decided May 29, 1967, that "Thus stolen property—the fruits of crime —was always subject to seizure."

We have considered the federal cases cited by defendant and while as the United States Supreme Court said in Abel v. United States, 362 U.S. 217, 235, 80 S.Ct. 683, 695, 4 L.Ed.2d 668, 684, "The several cases on this subject [the court was referring to the extent of search which may properly be made without a warrant following a lawful arrest] in this Court cannot be satisfactorily reconciled", we do not believe defendant's cases show the trial court was in error in overruling the motion to suppress. Here the action of the federal officers in opening the door to the locker room with defendant's keys and thereby exposing the stolen golf clubs was not a rummaging through defendant's effects,

---

2. Defendant argues that the search on January 17, 1965, was merely a fishing expedition and could have no rational connection with a complaint that the defendant sold whiskey on December 19, 1964, without a federal tax stamp. But the gist of the offense is carrying on the business of retail liquor dealer without paying the tax—a course of conduct—and not the sale of the liquor itself. Bush v. United

States (CCA 10) 218 F.2d 223, 224, and Woodland v. United States (CCA 10) 347 F.2d 956, 958, so that presence of liquor on the premises on any of the occasions in question would be closely related to the criminal enterprise and a corroborating circumstance tending to show the defendant was engaging in such a business.

not a wholesale, high and low, search for whatever could be found; in short, not an unreasonable violation of defendant's privacy.

The judgment is affirmed.

HENLEY, P. J., and HOLMAN, J., concur.

STORCKMAN, J., not sitting when cause was submitted.