James A. CIARELLI, Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. 54127.

Supreme Court of Missouri, Division No. 1.

June 9, 1969.

Robert G. Oberlander, Kuraner, Oberlander, Lamkin & Dingman, Kansas City, for movant-appellant.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

WELBORN, Commissioner.

Appeal from denial, after hearing, of relief under Criminal Rule 27.26, V.A.M.R., from 10-year sentence for receiving stolen property, valued at over $50. The conviction was affirmed on a previous direct appeal. State v. Ciarelli, Mo.Sup., 416 S.W.2d 944.

The first of the two points presented on this appeal is that appellant was denied the effective assistance of counsel upon his original trial because his attorney, by acting also as attorney for a prosecution witness, was representing conflicting interests.

The charge against Ciarelli arose out of a burglary and theft at the Tomahawk Hills Country Club in Johnson County, Kansas. Victor Osborne and Jerry Slavens testified that they entered the clubhouse at Tomahawk on January 8, 1965, and took a quantity of golf equipment and clothing which they brought to the Country Club Market in Kansas City. There they offered to sell the loot to Junior Bradley. Bradley called Ciarelli to the market and in Ciarelli's presence, Bradley paid Osborne and Slavens for the merchandise. Ciarelli's arrest on the charge for which he was convicted resulted from a raid by Federal Alcohol and Tobacco Tax Unit investigators of an after-hours place operated by Ciarelli. Some of the stolen golf clubs were discovered in the course of the raid.

Ciarelli originally employed an attorney who was to represent him and Bradley with whom he was jointly indicted. Apparently because of a question of representation of conflicting interests, that attorney withdrew as Ciarelli's attorney. Ciarelli then employed Mr. Joe Harrington. Harrington, an associate of the firm of Quinn, Peebles and Hickman, became ill. Mr. Robert Hickman of the firm took over the Ciarelli case about five days or a week before Ciarelli's trial.

Harrington also represented Victor Osborne, who was under a series of charges in Jackson County, Missouri. Hickman assumed, in part, Harrington's duties to Osborne when Harrington became ill. He was present at preliminary hearings on two charges against Osborne. Apparently other members of the firm also assisted in handling Osborne's difficulties. At the time of Ciarelli's trial, Osborne was awaiting sentencing on six felony charges in Jackson County to which he had pleaded guilty. On the trial of Ciarelli, Osborne testified that Hickman was not present when he pleaded guilty; that another representative of the firm was present at that time. Osborne testified at that time that he had talked to Hickman as his attorney.

The trial court's findings on this issue were stated as follows:

"As far as the double representation that has been referred to, it does appear that Harrington had represented Osborne. I am not clear myself at the moment as to whether Robert Hickman personally ever represented Osborne or not, but at least that office had represented Osborne. Certainly there was no point raised at the trial as to any conflict of interest, and it's not apparent in light of the subsequent events that there was any conflict of interest. It would appear to the contrary, if there was anything going on it would be that Osborne would be more likely to favor his own attorneys in connection with another matter."

In State v. Crockett and Edwards, Mo. Sup., 419 S.W.2d 22, Edwards had been represented on a criminal trial by a court-appointed attorney who was at the time a special assistant attorney general. Holding that this required setting aside of the conviction, the court stated (419 S.W.2d 28):

"In Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, it was held

that the federal constitution guarantees to persons accused of a crime in the state courts the right to representation by counsel. It has been ruled in numerous federal cases that a defendant in a criminal trial is denied his constitutional right to counsel if his attorney represents conflicting interests without his knowledge and assent. See, for example, Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Tucker v. United States, 9 Cir., 235 F.2d 238; Goodson v. Peyton, 4 Cir., 351 F.2d 905; Craig v. United States, 6 Cir., 217 F.2d 355; MacKenna v. Ellis, 5 Cir., 280 F.2d 592; United States ex rel. Miller v. Myers, D.C., 253 F.Supp. 55. 'A showing of actual prejudice is not required; all that is necessary is a showing of a conflict.' United States ex rel. Miller v. Myers, supra at p. 57. As was said in Glasser v. United States, the right 'is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.' See also Craig v. United States, supra, and Goodson v. Peyton, supra. In United States ex rel. Miller v. Myers, supra, it was said this way: 'His right to counsel under the Constitution is more than a formality, and to allow him to be represented by an attorney with * * * conflicting interests * * * without his knowledgeable consent is little better than allowing him no lawyer at all * * *.' "

■ There can be no doubt that, insofar as this problem is concerned, the fact that an attorney is of the defendant's own choosing is of no significance, absent knowledgeable consent of the accused. United States ex rel. Miller v. Myers, D.C., 253 F.Supp. 55; Porter v. United States, 5 Cir., 298 F.2d 461, 463 [2].

■ An attorney who represents both the defendant and a prosecution witness in the case against the defendant is representing conflicting interests. Porter v. United States, supra; United States ex rel. Miller v. Myers, supra; Hayman v. United States, 9 Cir., 187 F.2d 456, vacated on other grounds, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232; Tucker v. United States, 9 Cir., 235 F.2d 238; United States ex rel. Williamson v. LaVallee, D.C., 282 F.Supp. 968. There is, however, no deprivation of constitutional right if the defendant knowingly consents to being represented by an attorney who also represents a prosecution witness. Hayman v. United States, supra; United States ex rel. Miller v. Myers, supra.

The evidence here was sufficient to show representation by Hickman of both appellant and Osborne. The trial court's finding otherwise is rejected. However, if the trial court's conclusion was correct for other reasons, it should be sustained.

The trial court made no finding on Ciarelli's knowledge of Hickman's dual role. However, the evidence points to the existence of such knowledge. Hickman testified as follows:

"Q Did you ever prior to or during the trial tell Mr. Ciarelli that you also represented Vic Osborne and you thought there was a conflict of interest?

"A I believe I did, I am not sure. I don't know if I did or not, to tell you the truth. It's been quite a while."

Ciarelli's testimony was:

"Q You didn't know that Hickman while he was representing you was also representing Vic Osborne on a number of charges, did you?

"A Well, I think he said—I think my lawyer Hickman said something about that he did."

■ Although the testimony of Hickman was equivocal, the testimony of Ciarelli is sufficient to dispel any doubt as to his knowledge of Hickman's position. Having elected to proceed with such knowledge, he is not now entitled to relief on this ground. See Bowles v. Texas, 5 Cir., 366 F.2d 734; Juvera v. United States, 9 Cir., 378 F.2d 433.

The cases relied upon by appellant all involved situations in which it had been either alleged or shown that the dual representation was without the knowledge of the defendant. State v. Crockett and Edwards, supra, Porter v. United States, supra, Hayman v. United States, supra, and United States ex rel. Miller v. Myers, supra, all recognize that the situation must be beyond the knowledge of the accused. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, also relied upon by appellant, involved an entirely different situation. There, the court, over the objection of one defendant, appointed such defendant's attorney to represent a codefendant. That situation presents an entirely different problem.

The trial court found that Hickman "conducted a vigorous defense of this case * * *." That finding is adequately supported. Hickman obviously based his defense of the case largely upon the motion to suppress the evidence obtained in the Alcohol Tax Unit raid. However, he challenged the witness Osborne as to his extensive criminal career, possible attempts at plea bargaining and his narcotics problem. Appellant asserts that the failure of Hickman to interview Osborne before the trial is evidence that his position prevented his giving appellant his best effort. However, as the trial court found, it was obvious that Osborne's testimony would be adverse to Ciarelli and we cannot now fault a trial strategy which was based upon the motion to suppress.

Appellant also urges that, inasmuch as it was brought out in examination of Osborne at the trial that Hickman had represented him, Osborne and Ciarelli were "tarred with the same brush." If this were so, it was the result of the appellant's knowing choice of which he cannot now complain.

■ Appellant's second point on this appeal relates to the search which resulted in the discovery of, and the seizure of, the stolen golf clubs. This was the sole matter

urged for reversal of the conviction on the direct appeal. State v. Ciarelli, supra. The only additional evidentiary matter presented on the issue on this appeal is the addition of Ciarelli's version of the events. He did not testify at the trial. Ciarelli testified that he had been under arrest, handcuffed, for some 1½ to 2 hours before the key to the room in which the golf clubs were found was turned over to the officers conducting the search. He testified that Federal Agent Belecky asked him if he had the key to the locked door. According to Ciarelli, he responded that he wanted to see his lawyer before he turned over the key, and Belecky's response was that they could either get a search warrant or break the door down. "Well, I says, 'To keep from doing that,' I says, 'it's in my pocket. If you want it, take it.' And he reached in my pocket and took the key." Belecky's testimony was that he saw the locked door in the center of the building in which the arrest was made and asked Ciarelli if he had the key. Ciarelli said he did and handed it to Belecky.

At the most, this testimony would go to the question of consent to the search. On the prior appeal, this court expressly noted that it assumed the defendant had not consented to the search. 416 S.W.2d 946. We fail to see how Ciarelli's testimony, even if believed, would require a conclusion different from that reached on the prior appeal. It deals with a factor which had already been assumed favorably to the appellant. Since consent was not the basis for the upholding of the search, State v. Young, Mo.Sup., 425 S.W.2d 177, involving coerced consent, is of no assistance to appellant here.

■ Appellant renews the argument that the search was unreasonable because it extended to a locked room. This matter was fully considered on the prior appeal. On this appeal, United States v. Zarra, D.C., 258 F.Supp. 713, is offered as additional authority in support of the claimed unreasonableness of the search. Zarra was arrested on the stairway enroute to the sec-

ond floor of the Eagles Club of which he was the manager. He was eventually taken to the first floor of the club where keys to his private office were taken and the office opened and searched. The search of the private office was held unreasonable. The only similarity between that case and this is that entry to the searched premises was through a locked door. In this case, the agent of the Alcohol Tax Unit had been in the so-called "club" on nine occasions. He had observed Ciarelli enter the "locker room," or area beyond the locked door, and return with whiskey. On the evening of the arrest, the agent had been in the club. When he left, he bought a bottle of liquor from Ciarelli. Ciarelli went into the "locker room" for the merchandise which he sold. Ciarelli himself testified that thirty persons had keys to the locker room. The evidence clearly showed that the area in question was used in connection with the operation which provided the basis for Ciarelli's arrest. The search of that portion of the premises was, under the circumstances, wholly justified and reasonable. As pointed out in Mulligan v. United States, 8 Cir., 358 F.2d 604, 607 [3, 4], (8th Cir.), " * * * [T]he crucial test is not whether it was reasonable to procure a search warrant, but whether the search was reasonable."

Appellant attacks the presence of the Kansas City officers as without reason. However, the police do have the duty of enforcing the criminal provisions of the state liquor control law. See § 311.810, RSMo 1959, V.A.M.S. There was ample reason for the presence of the state officers, in view of the nature of the offense for which Ciarelli was arrested.

The trial court properly concluded that the issues pertaining to the search and seizure had been adequately answered on the prior appeal. The evidence on the hearing on the motion calls for no different conclusion nor do the additional authorities here advanced by appellant.

Judgment affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.