**UNITED STATES of America**

**v.**

**Ralph Louis ZARRA.**

**Cr. No. 14225.**

United States District Court
M. D. Pennsylvania.

Sept. 26, 1966.

Bernard J. Brown, U. S. Atty., Carlon M. O'Malley, Jr., Asst. U. S. Atty., Scranton, Pa., for plaintiff.

Hurwitz, Klein, Meyers & Benjamin, Harrisburg, Pa., for defendant.

### MEMORANDUM

FOLLMER, District Judge.

On March 9, 1966, one Ralph Louis Zarra was indicted for embezzlement in violation of 18 U.S.C. §§ 656, 2. Zarra was arraigned on April 7, 1966, and entered a plea of not guilty. On April 19,

1966, the defendant filed a Motion under Rule 41(e) of the Federal Rules of Criminal Procedure for the suppression of certain evidence which is alleged to have been obtained through an illegal search and seizure. Briefs have been received from the parties and an oral argument on the Motion was held on May 2, 1966. On July 25, 1966, pursuant to Order of Court, a hearing was held at which time testimony was given relating to the circumstances surrounding the search and seizure. It is this Motion which is currently before this Court.

Ralph Louis Zarra was the Secretary-Manager of the Fraternal Order of Eagles, located at 429 Market Street, Harrisburg, Pennsylvania, on the date in question. The Eagles is a private social club, which is open only to members. On the first floor of the Eagles building in Harrisburg, there are two offices in the front of the building, near the entranceway, and a large social room or barroom. On the second floor is a meeting hall, approximately 30 feet by 15 feet, and the secretary's office, which Zarra occupied. There is a storeroom on the third floor. The basement consists of a kitchen and a stock room. (Transcript, pp. 4–6.)[1]

On January 20, 1966, between 8:30 and 9:00 A.M., an arrest warrant was obtained from a United States Commissioner for Zarra. (Transcript, pp. 51–52.) Around 10:00 A.M., on the same day, five F.B.I. agents obtained admission to the Eagles Club by ringing the doorbell, which Zarra answered, and they then requested to talk to him in private (Transcript, pp. 7–8, 30). The agents testified they asked him if he had an office or some private place to talk, and he said, yes, upstairs. (Transcript, p. 32.) The five agents and Zarra went upstairs. On the way up to the second floor, an agent advised Zarra he was being arrested, read the body warrant to him when they reached the second floor, and advised him of his constitutional rights. (Transcript, pp. 9–10, 19, 32–33, 63, 66–67.) After this, Zarra was searched,

and everything was returned to him except a check in the amount of $4,200.00, drawn on the Keystone Trust Company, payable to Cash. (Transcript, pp. 10, 34–35.)

The agents then requested that Zarra open his office, on the second floor, which he did by climbing in through an opening from the stairs leading to the third floor. (Transcript, pp. 10, 37.) This office was searched, but nothing was taken. (Transcript, pp. 12, 37.) During this, two agents went up to the third floor, glanced around, and returned with nothing. (Transcript, pp. 36–37, 64–65.) Then the meeting hall on the second floor was given a quick search, but nothing was taken. (Transcript, pp. 37, 65.) The total time spent doing these things was about fifteen minutes. (Transcript, pp. 38, 65.)

Zarra and the agents then went downstairs to the first floor. The two offices near the entranceway are Zarra's private offices, and they were locked although an agent testified they were open when they entered the Eagles Club originally. (Transcript, pp. 12, 15, 39–40.) The agents then "demanded" the keys to the offices from Zarra, unlocked the doors and entered these offices. (Transcript, pp. 40, 73, 12.) During the search of these downstairs offices, the rest of the material which is the subject of the instant Motion was seized. This search lasted for approximately thirty minutes. The material that was seized consisted of deposit slips, loan notes, checks, an account booklet, an identi-plate, and similar papers. (Transcript, Exhibit G–1.)

It is conceded by the Government that the agents did not have a search warrant. (Transcript, p. 11.) It is also clear that Zarra did not consent to the searches by the agents. (Transcript, pp. 12–13, 25, 40.) The issue, therefore, is whether or not this was a valid search incident to an arrest under the Fourth Amendment to the United States Constitution.

■ ■ The search of the person of Zarra incidental to the arrest, and the

---

1. Transcript of testimony taken at hearing held before this Court on July 25, 1966.

seizure of the $4,200.00 check drawn on the Keystone Trust Company, was clearly valid. The search of an arrested person has a justification of necessity which does not subvert the purpose of the Fourth Amendment. The search is necessary to protect the arresting agents, to prevent the destruction of evidence by the person who has been arrested and to prevent the arrested prisoner from escaping. Thus it is not unreasonable to search a person physically and to seize things on his person. This exception is grounded in the absolute necessities of the situation and does not impinge on the Fourth Amendment. The search of Zarra was reasonable, and the motion to suppress the use of the $4,200.00 check will be denied.

The remaining articles that were seized were taken downstairs from Zarra's private office. (Transcript, pp. 54–55.) The question that remains is whether this was permissible as a reasonable search, contemporaneous with Zarra's arrest, of premises under his immediate control.

Several additional facts should be pointed out. After Zarra was arrested he was not allowed out of the presence of the arresting agents. (Transcript, pp. 42, 72.) The arresting agents had discussed the possibility of obtaining a search warrant at the same time they obtained the arrest warrant with an Assistant United States Attorney, but they had decided that they did not have sufficient grounds, because they did not know whether evidence (specifically an account book) still existed, nor where it was located. (Transcript, p. 47.) The account book had been known of since November 4, 1965, when it had been turned over to Zarra by a codefendant. (Transcript, pp. 44, 52.) The search was conducted to find this book and other evidence even though it was not known if the book existed. (Transcript, pp. 44–47, 62–63.) The office on the first floor is marked "Private Office," and is Zarra's private office. (Transcript, p. 23.)

There is no controversy over the fact that a person's private office is within the word "home" in the Fourth Amendment.

In a unanimous decision, the Supreme Court stated in Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964), as follows:

"It is argued that the search and seizure was justified as incidental to a lawful arrest. Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. Weeks v. United States, 232 U.S. 383, 392 [34 S.Ct. 341, 344, 58 L.Ed. 652] (1914); Agnello v. United States, 269 U.S. 20, 30 [46 S.Ct. 4, 5, 70 L.Ed. 145] (1925). This right to search and seize without a search warrant extends to things under the accused's immediate control, Carroll v. United States, supra, 267 U.S. [132], at 158 [45 S.Ct. 280, at 287, 69 L.Ed. 543], and, to an extent depending on the circumstances of the case, to the place where he is arrested, Agnello v. United States, supra, 269 U.S., at 30 [46 S.Ct. at 5, 70 L.Ed. 145]; Marron v. United States, 275 U.S. 192, 199 [48 S.Ct. 74, 77, 72 L.Ed. 231] (1927); United States v. Rabinowitz, 339 U.S. 56, 61–62 [70 S.Ct. 430, 433, 94 L.Ed. 653] (1950). The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime —things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest. Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest. Agnello v. United States, supra, 269 U.S., at 31 [46 S.Ct. at 5, 70 L.Ed. 145]. * * "

The Government has placed much emphasis on the case of Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947). In that case the search of a four room apartment was upheld. The distinction between the Harris case and this case is very similar to the distinction made by the Fifth Circuit in Drayton v. United States, 205 F. 2d 35, 37 (5th Cir. 1953), wherein the Court stated:

"The search here involved transcends even the doctrine of the Harris case, which appears to be the apogee of the Supreme Court decisions on search of a dwelling without a warrant. In the Harris case the other rooms of the apartment were open, readily accessible, and contiguous to the situs of the arrest. Here, room No. 5, in which the contraband was found, was wholly unconnected with the room in which the arrest was made. It was on another floor, and in another part of the building. * * *

\* \* \* \* \* \*

"This search was a general exploratory one, made solely in the hope of finding evidence—any evidence— which might connect the defendant with crime. Apparently, one of the primary purposes of making the arrest was to enable the federal officers to make a general search of the premises without a warrant. Such searches are uniformly condemned by the courts. * * *"

■ Here, Zarra had been under investigation for two and one-half months. There was no attempt to get a search warrant from November 4, 1965 through January 20, 1966, the day Zarra was arrested. The agent in charge of the investigation admitted that there was no "probable cause" to obtain a search warrant on January 20, 1966, and gave this as the reason for not obtaining one. Zarra was arrested on the second floor of the Eagles Club and was personally searched. The office there and the meeting hall were searched. At all times, after his arrest, Zarra was in the custody of the agents. There does not appear to be any allegation that something in the locked offices on the first floor could have been used to assault an officer or to effect an escape while he was in the custody of five F.B.I. agents, nor could he have destroyed any of the seized items while in such custody. The reasons behind the exception of allowing a search of the immediate premises is because these premises are regarded as an extension of the person over which he has control and thus such a search can be justified for the same reasons that a search of a person is justified.

■ There is no question but that there was no probable cause to search Zarra's private office which could have been asserted if the agents had tried to obtain a search warrant. "And where there is lacking probable cause to justify the issuance of a search warrant it inescapably follows, as night follows day, that in the absence of circumstances justifying 'contemporaneous searches' as defined in Preston v. United States, supra, local police, or their federal counterpart, cannot engage in 'fishing expeditions' in violation of the 4th Amendment guarantees proscribing 'unreasonable searches and seizures.'" United States v. Marrese, 336 F.2d 501, 504 (3d Cir. 1964). Zarra was in the custody of the agents from the time he was arrested on the second floor of the Eagles Club. The search of the offices on the first floor was not incident to the arrest and violates the Fourth Amendment. Moreover, it appears that this was an attempt to conduct a search for which a search warrant could not be obtained by arresting Zarra in the place that the agents wanted to search.

Accordingly, the Motion of the defendant for the suppression of evidence seized on January 20, 1966, will be granted except as to the $4,200.00 check, payable to Cash, drawn on the Keystone Trust Company, Harrisburg, Pennsylvania.