UNITED STATES of America
v.
Clarence SAMUELS.
Crim. No. 72–492.

United States District Court,
E. D. Pennsylvania.

May 9, 1974.

John F. Penrose, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Brian E. Appel, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

DITTER, District Judge.

This case involves a warrantless search, the refusal to sever the trial of two defendants charged with bank robbery, and identification questions.

At 10:15 A.M. on August 21, 1972, the Castor and Erie branch of the Philadelphia National Bank was robbed by three men, one of whom was armed and one of whom drove the getaway car. An eyewitness provided the police with the license number of the automobile, and in less than two hours, a residence at 6971 Cedarpark Ave., approximately eight miles from the bank, was placed under surveillance. The license number in question had been issued to Arthur Mapp who lived at this address. A male whose clothing was similar to that worn by one of the robbers came out of the building and removed the license plate from a car which matched the description of the vehicle used in the robbery. The officers placed the man under arrest, determining that his name was Arthur Mapp.

When initially questioned about the presence of any other men in the house, Mapp indicated that only his wife and children were there. However, after the officers told him they would have to go into the building to check, Mapp changed his story and said that his wife, child, and "a friend named Sam" were in the apartment. In compliance with an order of the police, Mapp called the defendant Samuels to come down. Samuels did so and was placed under arrest without incident. Mapp was again asked if anyone was upstairs. He insisted that only his wife and child were there, and said the officers were free to go up and check. This time Mapp spoke the truth—his wife and child were alone. However, while one of the officers was searching Mapp's apartment for the third robber, he found, in plain view, a 9 mm automatic pistol sticking out of a partially opened case. Both the gun and the case were seized as evidence. At trial the government established that the gun found in the apartment was the same gun which was fired during the course of the bank robbery.

### Seizure of the Gun and Case

Defendant's first argument is that the gun and case were incorrectly admitted into evidence. A pre-trial motion to suppress this physical evidence was denied after a lengthy hearing. The defendant again raises the issue that since Mapp's apartment was entered without a search warrant, the physical evidence should have been suppressed. I disagree. The Fourth Amendment does not prohibit warrantless searches, but rather unreasonable searches. The reasonableness of a search depends upon the facts and circumstances of the particular case, considered in the context of established Constitutional principles. Although it is basic that warrantless searches are *per se* unreasonable under the Fourth Amendment, there are several carefully delineated exceptions, Coolidge v. New Hampshire, 403 U.S. 443, 454, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, rehearing denied, 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971), Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967), including searches made by police when they are in hot pursuit of a criminal, Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), or when the securing of a warrant might allow the criminal to escape or destroy evidence, Chimel v. California, 395 U.S. 752, 763–764, 89 S.Ct. 2034, 2040, 23 L. Ed.2d 685, rehearing denied, 396 U.S. 869, 90 S.Ct. 36, 24 L.Ed.2d 124 (1969), United States v. Davis, 461 F.2d 1026 (3rd Cir. 1972). In the instant case, the

facts clearly show that sufficient exigent circumstances existed to justify a warrantless search: a bank had been robbed less than two hours earlier; shots had been fired; the license on the getaway car was registered in the name of Arthur Mapp at the address in question; Mapp, who matched the description of one of the robbers, had come from the building and had removed the tag from the vehicle; and when apprehended, Mapp had lied about the presence of Samuels in the apartment.

After Samuels surrendered to the police, they knew the third robber, the gun, and the stolen money, were still unaccounted for. There was strong reason to believe that all three were in Mapp's apartment and that unless the apartment was searched immediately, the missing robber might attempt to hide or destroy the money and use the gun to make good his escape. It was logical for the police to believe that speedy action was essential, and that only by an immediate, thorough search of the apartment, could they protect themselves and hope to prevent the destruction of the money. This was not only an instance where the exigencies of the situation made a search of the premises imperative, Warden, Maryland Penitentiary v. Hayden, supra, at 298–299, 87 S.Ct. at 1645–1646, but one in which any other action would have been a dereliction of duty. It follows that since the police had a right to enter the apartment without a warrant, they also had a right to seize evidence (the gun and case) which was concededly in plain view. Coolidge v. New Hampshire, supra, at 465, 91 S.Ct. at 2037; Ker v. California, 374 U.S. 23, 43, 83 S.Ct. 1623, 1635, 10 L.Ed.2d 726 (1963); United States v. Davis, supra, at 1034–1035; United States v. Titus, 445 F.2d 577 (2d Cir.), cert. denied, 404 U.S. 957, 92 S.Ct. 323, 30 L.Ed.2d 274 (1971).

It was also argued that the search of the apartment was consensual, because after Samuels' surrender, Mapp invited the police to enter the building and verify his statement that only his wife and child were there. Although I believed the officers and rejected Mapp's testimony about this incident, my conclusion that exigent circumstances existed makes it unnecessary to consider the validity of Mapp's consent.

*Severance*

Samuels contends additionally that I erred in refusing to grant him a severance. Before and during trial, both Samuels and Mapp insisted a severance should be allowed because their respective trial strategies would be conflicting.

As a general rule, defendants charged with the joint commission of a crime are to be tried together. United States v. Rickey, 457 F.2d 1027 (3rd Cir.), cert. denied, 409 U.S. 863, 93 S.Ct. 153, 34 L.Ed.2d 110 (1972); United States v. DeLarosa, 450 F.2d 1057 (3rd Cir. 1971), cert. denied, 405 U.S. 927 and 957, 92 S.Ct. 978 and 1189, 30 L.Ed.2d 800 (1972).

Severance should be granted only if prejudice will result, and the heavy burden of proving such prejudice is on a defendant asking to be tried separately. The defendant must show something more than the fact that a separate trial might offer him a better chance of acquittal. Tillman v. United States, 406 F.2d 930, 935 (5th Cir.), vacated in part, 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742 (1969).

Here, Samuels contends he was prejudiced because a joint trial made it possible for the government to obtain testimony from Mapp which was damaging to Samuels. This evidence was received in cross-examination after Mapp took the stand in his own defense. Had a severance been granted, however, Mapp could have been called as a witness against Samuels and could only have escaped testifying, if at all, by invoking his Constitutional privilege against self-incrimination. It is possible, therefore, the joint trial forced Mapp to testify against Samuels although he might have preferred not to do so. In effect, Samuels argues he was prejudiced because the joint trial made it impossible for him to

benefit from Mapp's Constitutional rights. However, just as Samuels could not assert Mapp's privileges directly, Rogers v. United States, 340 U.S. 367, 371, 71 S.Ct. 438, 440, 95 L.Ed. 344, rehearing denied, 341 U.S. 912, 71 S.Ct. 619, 95 L.Ed. 1348 (1951), so he cannot complain because he was kept from doing so indirectly. United States v. Elliott, 418 F.2d 219 (9th Cir. 1969).

 The failure to grant a severance because defendants have inconsistent interests does not constitute an abuse of discretion. United States v. Eastwood, 489 F.2d 818 (5th Cir. 1973). In order to demonstrate abuse of discretion by a trial judge, one must show more than a joint trial of co-defendants whose strategies were antagonistic. At the very least, it must be established that the differences were so irreconcilable that the jury unjustifiably inferred that this conflict alone demonstrated both defendants were guilty. United States v. Robinson, 139 U.S.App.D.C. 286, 432 F.2d 1348, 1351 (1970). In the instant case there was no such conflict. Samuels' presented no testimony and his only defense was to attack the credibility of those who testified against him. The jury found Mapp not guilty, but his innocence was not dependent upon Samuels' being found guilty. I conclude my denial of Samuels' motion to sever was not an abuse of discretion.

*Identification*

Samuels also presented a motion to suppress identification testimony on the grounds that counsel appointed to represent him (whom he had never met) was abroad at the time a lineup was scheduled. Substitute counsel was appointed and the lineup was held. Samuels has now abandoned this ground, but contends that in court identification testimony was tainted by the lineup and should have been excluded. After a suppression hearing, I decided the lineup had been conducted in such a way that there was no suggestion to any witness as to whom to identify. However, cross-examination as to all details

of the lineup was permitted and the jury was instructed to consider whether the lineup was suggestive or not. The credibility to be afforded identification witnesses, even biased identification witnesses, is for an appropriately instructed jury. United States v. Zeiler, 470 F.2d 717, 720 (3 Cir. 1972). In the case sub judice, those instructions followed the Pennsylvania approach found in Commonwealth v. Kloiber, 378 Pa. 412, 106 A.2d 820 (1954), and approved by United States v. Barber, 442 F.2d 517, 528 (3rd Cir.), cert. denied, 404 U.S. 958, 92 S.Ct. 327, 30 L.Ed.2d 275 (1971).

There is no merit in the reasons Samuels advances in support of his post-trial motions and they must be refused.