393 A.2d 459

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Rovanna BEST–BEY, Nathaniel Best-Bey, Tyrone Elwood Scott and Vernon Mayes.**

Superior Court of Pennsylvania.

Argued March 23, 1977.

Decided Oct. 20, 1978.

P. Stephen Lerario, Assistant District Attorney, with him William T. Nicholas, District Attorney, Norristown, for Com., appellant.

E. William Heuser, Norristown, for appellee, Rovanna Best-Bey.

Richard C. Sheehan, Norristown, submitted a brief for appellees, Nathaniel Best-Bey, Tyrone Elwood Scott and Vernon Mayes.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

The Commonwealth has charged the defendants, appellees, with numerous counts of theft of movable property, theft by receiving stolen property, criminal mischief, criminal conspiracy and possession of motor vehicles with defaced

serial numbers. Defendants made an application to suppress certain evidence, which they alleged was acquired by the Commonwealth as a result of an illegal search and seizure. After hearing upon the application the court below suppressed the evidence, which ruling for all practical purposes effectively terminated or substantially handicapped the prosecution of the charges. The Commonwealth has appealed.

On or about December 22, 1975, Trooper John T. Hennessey was told by a citizen who is a respected member of the community that surreptitious activities were taking place at a location known as the Old Mill in Upper Salford Township, Montgomery County, near the intersection of Quarray Road and Salford Station Road. Having been alerted to this activity, Trooper Hennessey on January 1, 1976, went to the premises at the location described by the informing citizen. There he noted that there was a large rectangular 2-story building located adjacent to Old Reading Railroad tracks, from which the rails had been dismounted. The lower half of the building was constructed of green cinder block with a wooden frame upper half and with a roof partly of metal and partly of roofing shingles. The property was owned by one Geoffrey Loughrey. The railroad tracks used to be a siding for the building. It was now used as a roadway up to and alongside the building. The premises were not fenced; there was no gate or other deterrent to entry. On the said January 1st, 1976, Trooper Hennessey visited the grounds; he saw a G.M.C. truck having a blue cab and a silver colored body parked on the old railroad bed. The Officer took the vehicle identification number (V.I.N. number, the same as the Manufacturer's number) from that truck. Further investigation disclosed that the truck was registered to Rovanna Best (who is the same person as Rovanna Best-Bey, one of the appellees) of Philadelphia.

On January 9, 1976, Trooper Hennessey along with Corporal DiStefano returned to the property and obtained from some vehicles parked outside of the building additional V.I.N. numbers. One was from a 1972 Ford pick-up truck

parked outside of the overhead doors, which was the main working entrance to the Old Mill. The Ford truck registration had been issued to a person named PETRELLIS, of 719 Crestview Street, Philadelphia, and the truck had been reported stolen on September 8, 1975. On January 16, 1976, three officers revisited the premises and noted that at the rear of the G.M.C. truck were five (5) motor vehicle engines, (4 truck and 1 automobile), covered by a canvas cover. An examination of these engines disclosed that one had a V.I.N. number—6L47S4Q423194—belonging to a 1974 Cadillac El Dorado, stolen from the King of Prussia shopping center in Upper Merion Township, Montgomery County, on December 24, 1975. The investigations by the officers were carried on in the night time. None of them entered the Old Mill building until a search warrant had been obtained, as will be described infra. On January 10, 1976, Trooper Hennessey had again contacted the informing citizen who said that a Cadillac automobile arrived at the Old Mill on a flat bed truck. It was parked outside for a few days and then taken inside and was never seen again. On February 2, 1976, Rovanna Best-Bey was seen leaving the Old Mill premises in a dump truck. The vehicle was loaded with automotive parts and assorted body parts. On February 6, 1976, he was observed leaving the area operating a red dump truck, again loaded with automobile body parts. On February 9, 1976, Rovanna Best-Bey and another black male were observed leaving the Old Mill with automotive parts loaded on the back of a 1967 Ford truck. Registration for this vehicle had been issued to Rovanna Best.

A title search from a 1974 Chevy Truck revealed that it was bought by Best from the Underwriters Salvage Co., in Runnemede, New Jersey, which the salvage company had bought for junk on May 10, 1974. The V.I.N. number had been removed from the salvage vehicle and placed on another vehicle which was in good condition.

Armed with this information, Trooper Hennessey applied for and received a search warrant for the premises which was executed on February 10, 1976, at five minutes to four

p.m. The El Dorado engine, the Petrellis truck and the Ford IV wheel drive frame with the V.I.N. number welded over were still on the premises. The Petrellis truck had a V.I.N. number when the officer first saw it, but on February 10th it had no such number. Subsequent search warrants were issued also, as the investigation developed further unlawful activity, on six (6) additional occasions, i.e., February 11th, February 12th, February 18th, February 26th, March 16th, and March 19th, 1976. Rovanna Best-Bey was present on February 26, 1976.

By February 9, 1976, Trooper Hennessey believed he had enough knowledge and information about this operation at the Old Mill to justify making an application for a search warrant. On February 10, 1976, he applied for and secured a search warrant. He recited as probable cause the following:

"On or about 22 Dec 75, reporting officer was contacted by a confidential informant who related that criminal activity was taken place at a large warehouse located in Salford Station, Montgomery County Penna. The informant stated that several new trucks and motor vehicles were seen being taken into the building and bright lights and smoke being emitted from the shop as though the vehicles were being dismantled. The informant stated that the building was located parallel to the Reading Railroad tracks approximately 500 feet from the intersection of Quarry Rd., and Salford Station Rd., in Salford Station, Upper Salford Twp., Montgomery County Penna. On 1 Jan 76, reporting officer accompanied by Sgt. Daniel MONKIEWICZ., proceeded to Salford Station, Penna., and observed a building, green in color at the above mentioned location. The building is a two story rectangular building. The bottom half is cinder block with a wood frame upper half. The building has a part metal roof and part roofing shingles. The property is owned by one Geoffery LAUGHERY, Salford Station Rd., Salford Station Penna. A registration number was obtained from the G.M.C. truck, sivler (sic) enclosed box, parked on the old

railroad bed. The number was Penna. CK90933. The vehicle was registered to Rovanna BEST 3125 Natrona St., Philadelphia Penna. A criminal records check was made with the Philadelphia Police Department. The subject BEST has a criminal record involving a large number of arrests for theft of motor vehicles, receiving stolen property and related offences. His last arrest is listed as 12/28/74, 13 counts of theft of motor vehicles etc. The subjects correct name is Rovanna Best BEY. A check with the Motor Vehicles Bureau revealed that the subject has 12 vehicles registered to him in the name of Rovanna BEST. The subject aslo (sic) is in possession of a Pennsylvania Operators License in the name of Rovanna BEST.

On 9 Jan 76, reporting officer and Tpr. Albert DeSTEFANO, P.S.P. conducted a surveillance of the building known sa (sic) the old mill. VIN number F10YEP85341 was obtained from a green Ford Truck, 1972 model, issued to Petrellis 719 Crestview St., Philadelphia Penna., reported stolen on 9/8/75., from the city of Philadelphia, Penna.

On 16 Jan 76, a surveillance of the old mill was conducted by Tprs. Richard PREBULA, and David MOTKO. a VIN number was obtained from a motor and transmission which was located behind the G.M.C. Truck on the old railroad bed under a canvas cover. The number was 6L47S4Q423194. The vehicle, a 1974 Cadillac was reported stolen from the King of Prussia Shopping Center, Upper Merion Twp., Montgomery County Penna., on 12/24/75. The owner of the vehciel (sic) is one Joseph R. PEARL of CURTI Dr., Southampton, Penna.

On 10 Jan 76, reporting officer contacted informant who stated that a Cadillac vehicle arrive (sic) at the old mill on a flat bed truck. The vehicle was parked outside of the building for several days and then taken inside. The vehicle was not seen again. The informant stated that smoke was emitted from the vent system of the building indicating that cutting or burning was being done inside of the building.

On 2 Feb 76, the subject BEST was observed leaving the 'Old Mill' with a red dump truck. The vehicle was loaded with automobile parts, mostly fenders and assorted body parts.

On 6 Feb 76, the subject BEST was again observed leaving the area operating a red dump truck again loaded with automobile body parts.

On 9 Feb 76, the subject BEST and another black male were observed leaving the warehouse with automotive parts loaded on the back of a 1967 Ford Tk., bearing Penna. registration CL47520. the vehicle is issued to Rovanna.BEST. On the night of 9 Feb 76, a surveillance was conducted of the location and it was determined that the engines to the rear of the silver box truck bearing Pennsylvania registration CK90933, located on the old railroad bed adjacent to the 'OLD MILL'., are still in that location.

A title search of the 1974 Chevy Tk. VIN CCY244 B154292, bearing registration CT51486 was bought by BEST from the Underwriters Salvage Company, Black Horse Pk., Runnemede, New Jersey. New Jersey Motor Vehicle Division records revealed that the vehicle was previously owned by Wayne C. INGMAR 517 Franklin Ave., Cherry Hill, New Jersey. The local police agency varified (sic) that the vehicle was sold to the salvage company for junk on 5/10/74. This information indicates that the VIN number of the salvage vehicle was removed and placed on another vehicle in good condition, possibley (sic) a stolen vehicle.

The informant is a concerned citizen who is a respected member of the community."

The defendants-appellees claim that the visits which the State police made to the Old Mill premises were an unreasonable search and violated their Fourth Amendment rights under the U.S. Constitution, that they had a reasonable expectation of privacy of such magnitude as to preclude the elementary kind of investigation which the state troopers made upon the premises which they, the defendants, occu-

pied. With this claim we disagree. In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) the court said among other things: "We have recently held that 'the Fourth Amendment protects people, not places,' *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 . . . (1967) and where ever an individual may harbor a reasonable 'expectation of privacy,' id., at 361, 88 S.Ct. at 516, 19 L.Ed.2d at 588 (Mr. Justice Harlan concurring), he is entitled to be free from unreasonable governmental intrusion. Of course, the specific content and incidents of this right must be shaped by the context in which it is asserted. For 'what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures' " [citation omitted] at 9, 88 S.Ct. at 1873.

In determining whether the search made here was or was not reasonable the case of *United States v. Vilhotti*, D.C., 323 F.Supp. 425, affd. in part, rev'd in part 452 F.2d 1186 cert. denied 406 U.S. 947, 92 S.Ct. 2051, 32 L.Ed.2d 335 (1971) is instructive:

". . . Thus to ascertain what constitutes an unreasonable search the court must evaluate a person's efforts to insure the privacy of an area or activity in view of both contemporary norms of social conduct and the imperatives of a viable democratic society. *Katz v. United States*, supra, see Greenawalt, 'Consent Problem in Wiretapping and Eavesdropping', 68 Col.L.Rev. 168 (1968)."

". . . Here, given that an unattached garage was the object of search, neither social nor physical barriers were sufficient to protect its interior from intrusion by a casual observer. Kelly's flashlight search, therefore, did not encroach upon defendants' reasonable expectations of privacy. Indeed, it is not unlikely that police officers would routinely make such inspections as part of their peace-keeping functions."

Instantly on the one hand the expectation and need of society and the government to discover and destroy an activity engaged in the disposition of stolen vehicles is high. On the other hand, a possessor of an open yard, not part of

the curtilage of a dwelling who leaves parked upon it, unattended and unoccupied motor vehicles and parts of motor vehicles, exhibits a very slight expectation or even no expectation of privacy of the vehicle identification numbers.

In making their search the officers entered no building, they made no intrusion upon the person of any of the defendants and in no way disturbed or molested the defendants or their property. The investigation and search made by the officers disclosed no unjustified aggression and was not unreasonable. There was adequate probable cause for the issuance of the search warrants.

Order reversed and case remanded for trial.

SPAETH, J., files a concurring opinion, in which JACOBS, President Judge, joins.

HOFFMAN, J., files a dissenting opinion.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

The decision in this case was made prior to the retirement of HOFFMAN, J.

SPAETH, Judge, concurring:

It is beyond dispute that "the Fourth Amendment [of the United States Constitution] protects people, not places." *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). However, the scope of this protection is uncertain. *See Mancusi v. DeForte*, 392 U.S. 364, 368, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968) (seizure of papers from labor union office unreasonable although office shared by several officials); *United States v. Romano*, 388 F.Supp. 101, 105 (E.D.Pa.1975) (seizure of newspapers from drainpipe on rear wall of townhouse reasonable); *Commonwealth v. Cooper*, 240 Pa.Super. 477, 489–490, 362 A.2d 1041, 1049–50 (1976) (conversation overheard by police lawfully in adjacent hotel room admissible); *Commonwealth v. Cubler*, 236 Pa. Super. 614, 346 A.2d 814 (1976) (Opinion by WATKINS, former P. J., joined by PRICE and VAN der VOORT,

JJ.—proper to seize black bag placed in dog house in back yard; *but see* dissenting opinion by HOFFMAN, J., *id.*, 236 Pa.Super. at 621, 346 A.2d at 817); *Commonwealth v. Hernley,* 216 Pa.Super. 177, 263 A.2d 904 (1970) (seizure of evidence through uncurtained window reasonable).

Here, I think it unnecessary to determine whether the scope of protection afforded by the Fourth Amendment extended to defendants' premises, because the police obtained sufficient evidence from their initial surveillance from the railroad right of way and their later examination of items left on the railroad right of way to establish probable cause for the issuance of the search warrants. Defendants had no reasonable expectation of privacy as to this right of way because it was located parallel to defendants' warehouse but was not part of the premises. Therefore, the police were lawfully on the right of way and the information gained from this vantage point or from items left on it could properly be considered in determining whether there was probable cause for issuance of the warrants. *Harris v. United States,* 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

During the initial surveillance the police learned by checking the license plate number that a truck parked on the right of way was registered in the name of defendant Rovanna Best-Bey. A criminal record check made with the Philadelphia Police Department revealed that defendant Rovanna Best-Bey had an extensive number of arrests for vehicle thefts, receiving stolen property, and related offenses. Furthermore, during one of their nighttime surveillances the police obtained a vehicle identification number from a motor and transmission that had been left on the right of way and were covered only by a tarpaulin. This vehicle identification number belonged to a stolen car.

Thus, in addition to the unidentified informant's tip, the magistrate could properly have considered these facts: that defendant Rovanna Best-Bey was the registered owner of a truck parked near the premises; that he had an extensive criminal record involving vehicle theft; and that the parts

found on the railroad right of way belonged to a stolen car. These facts were sufficient to give the magistrate probable cause to believe that illegal activity was going on°in the premises.

Accordingly, I agree with the majority that the lower court's order suppressing the evidence obtained as a result of the searches should be reversed and the case remanded for further proceedings.

JACOBS, President Judge, joins in this opinion.

HOFFMAN, Judge, dissenting:

Appellant, the Commonwealth,[1] contends that the lower court erred in granting appellees' motion to suppress evidence. According to the Commonwealth, the search warrant of February 10, 1976 contained sufficient probable cause to justify its issuance.[2] I disagree and, therefore, would affirm the lower court.

1. I note that "[t]he Commonwealth may only appeal from a pre-trial order if it involves a pure question of law and if it effectively terminates or substantially handicaps a prosecution." *Com. v. DeFelice*, 248 Pa.Super. 516, 522, 375 A.2d 360, 363 (1977). See also *Commonwealth v. Ray*, 448 Pa. 307, 292 A.2d 410 (1972); *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963). In the instant case, the Commonwealth meets the requirements necessary to appeal from a suppression order. First, the Commonwealth appeals from a pure question of law: the lower court's finding that the Commonwealth violated appellees' Fourth Amendment rights by intruding upon appellees' reasonable expectation of privacy and by failing to provide sufficient valid probable cause to justify the issuance of a search warrant. Second, the suppression order effectively terminated or substantially handicapped the Commonwealth's prosecution. The lower court suppressed the evidence obtained pursuant to the February 10, 1976 warrant because the warrant did not contain sufficient probable cause. The lower court further suppressed evidence obtained as a result of all subsequent warrants because they were based on the initial illegal warrant. Moreover, the lower court suppressed all evidence obtained as a result of the illegal surveillance of the property. As the record demonstrates, the Commonwealth lacks any additional evidence on which to base its prosecution. Thus, the prosecution is effectively terminated or substantially handicapped as a result of the suppression order.

2. In its brief the Commonwealth also alleges that the lower court erred in granting the suppression order because; (1) if a portion of the probable cause section of a search warrant is based on illegally

Appellees were charged with three counts each of theft of movable property,[3] theft by receiving stolen property,[4] criminal mischief,[5] criminal conspiracy,[6] and possession of motor vehicles with defaced serial numbers.[7] On May 14, 1976, the Montgomery County Court of Common Pleas granted appellees' motion to quash the informations charging theft of movable property and theft by receiving stolen property, but denied the motion to quash the remaining charges.

On May 13, and July 12, 1976, appellees filed motions[8] to suppress evidence obtained as a result of all searches of the Old Mill property. At a suppression hearing on July 21, 22, and 23, 1976, the Commonwealth presented the following facts.

obtained evidence, the lower court must look to other paragraphs of the probable cause section to determine whether there are other valid sources independently sufficient to constitute probable cause, (2) the items observed by the police which are not named in the search warrant were obtained lawfully as the fruits or evidence of a crime, (3) any minor defect in the warrant or affidavit does not justify the remedy of suppression absent a showing of prejudice to the appellees, and (4) the warrants subsequent to February 10, 1976, contained sufficient probable cause without reference to the initial warrant of February 10, 1976, to justify their issuance. The Commonwealth did not raise any of these issues in its answer to appellees' motion to suppress or in New Matter and the lower court never had the opportunity to consider these arguments. Accordingly, these contentions are waived. Pa.R.App.P. 302(a); see also *Commonwealth v. Curtis*, 253 Pa.Super. 163, 384 A.2d 1280, n. 6 (1977); *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).

**3.** The Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973; 18 Pa.C.S. § 3921.

**4.** The Crimes Code, supra; 18 Pa.C.S. § 3925.

**5.** The Crimes Code, supra; 18 Pa.C.S. § 3304.

**6.** The Crimes Code, supra; 18 Pa.C.S. § 903.

**7.** The Vehicle Code, Act of April 29, 1959, P.L. 58, § 301; 75 P.S. § 301. Since the date of the alleged offense, the Vehicle Code has been thoroughly revised. For the present analogue to 75 P.S. § 301, see The Vehicle Code, Act of June 17, 1976, P.L. 162, Act No. 81, eff. July 1, 1977; 75 Pa.C.S. § 7102.

**8.** The lower court granted appellees' motion to consolidate filed on July 13, 1976.

In December of 1975, Trooper John T. Hennessey of the Pennsylvania State Police received information from a confidential informant described only as "a concerned citizen who is a respected member of the community." The informant stated that "criminal activity was [taking place] at a large warehouse located in Salford Station, Montgomery County, Penna. . . . Several new trucks and motor vehicles were seen being taken into the building and bright lights and smoke being emitted from the shop as though the vehicles were being dismantled." The property, known locally as the Old Mill, was located near the intersection of Quarry Road and Salford Station Road in Upper Salford Township, Montgomery County.

Pursuant to this information, the police began a surveillance of the property which continued until they obtained a search warrant on February 10, 1976. The building under surveillance was a two story green cinder block and wood frame structure located parallel to an unused railroad right of way on which the rails and ties had been removed sometime before the initial surveillance began. Appellee Rovanna Best-Bey leased the premises from its owner. The building had bathrooms on the first and second floors, and an office area in the front of the building. Although one room was panelled, there was no furniture in any of the rooms.

The initial police surveillance was conducted from the railroad right of way which could be used as a road. From that vantage point, Trooper Hennessey observed and noted the license plate number of a GMC truck which was parked on the railroad right of way. A subsequent check of records through the use of a computer print-out indicated that the truck was registered in the name of appellee Rovanna Best-Bey.

On January 5, 9, and 16, 1976, Trooper Hennessey, accompanied by other troopers, returned to the Old Mill property at night without a search warrant. On these occasions, the police obtained vehicle identification numbers (VINs) from parts of motor vehicles located outside, but close to the

building. They obtained the VINs by opening a door to a truck cab and lifting a canvas covering a pile of engines. The police used flashlights to observe and record the VINs; they then seized several of the engines. They did not observe vehicles being taken into the building, smoke being emitted from the building, or any bright lights. Trooper Hennessey testified that the officers came onto the property at night primarily in order to avoid detection. Although the property was not surrounded by a fence, it was not open to the public.

On February 10, 1976, a police officer recited the following information in the probable cause section of an application for a search warrant of the Old Mill:

"On or about 22 Dec 75, reporting officer was contacted by a confidential informant who related that criminal activity was taking place at a large warehouse located in Salford Station, Montgomery County Penna. The informant stated that several new trucks and motor vehicles were seen being taken into the building and bright lights and smoke being emitted from the shop as though the vehicles were being dismantled. The informant stated that the building was located parallel to the Reading Railroad tracks approximately 500 feet from the intersection of Quarry Rd., and Salford Station Rd., in Salford Station, Upper Salford Twp., Montgomery County Penna.

"On 1 Jan 76, reporting officer accompanied by Sgt. Daniel MONKIEWICZ., proceeded to Salford Station, Penna., and observed a building, green in color at the above mentioned location. The building is a two story rectangular building. The bottom half is cinder block with a wood frame upper half. The building has a part metal roof and part roofing shingles. The property is owned by one Geoffery LAUGHERY.

"Salford Station R., Salford Station Penna. A registration number was obtained from the G.M.C. truck, silver enclosed box, parked on the old railroad bed. The number was Penna. CK90933. The vehicle was registered to Rovanna BEST 3125 Natrona St., Philadelphia Penna. A criminal

records check was made with the philadelphia Police Department. The subject BEST has a criminal record involving a large number of arrests for theft of motor vehicles, receiving stolen property and related offences. His last arrest is listed as 12&128/74, 13 counts of theft of motor vehicles etc. The subject's correct name is Rovanna Best BEY. A check with the Motor Vehicles Bureau revealed that the subject has 12 vehicles registered to him in the name of Rovanna BEST. The subject also is in possession of a Pennsylvania Operators License in the name of Rovanna BEST.

"On 9 Jan 76, reporting officer and Tpr. Albert DeSTEFANO, P.S.P. conducted a surveillance of the building known as the Old Mill. VIN number F10YEP85341 was obtained from a green Ford Truck, 1972 model, issued to Petrellis 719 Crestview St., Philadelphia, Penna., reported stolen on 9/8/75., from the city of Philadelphia, Penna.

"On 16 Jan 76, a surveillance of the Old Mill was conducted by Tprs. Richard PREBULA, and David MOTKO. a VIN number was obtained from a motor and transmission which was located behind the G.M.C. Truck on the old railroad bed under a canvas cover.[8a] The number was 6L47S4Q423194. The vehicle, a 1974 Cadillac was reported stolen from the King of Prussia Shopping Center, Upper Merion Twp., Montgomery County Penna., on 12/24/75. The owner of the vehicle is one Joseph R. PEARL of CURTI Dr., Southampton, Penna.

"On 10 Jan 76, reporting officer contacted informant who stated that a Cadillac vehicle arrive at the Old Mill on a flat bed truck. The vehicle was parked outside of the building for several days and then taken inside. The vehicle was not seen again. The informant stated that smoke was emitted from the vent system of the building indicating that cutting or burning was being done inside of the building.

---

**8a.** The concurring opinion construes this ambiguous sentence to mean that the vehicle parts were located on the railroad right of way. At the suppression hearing, the affiant testified to the contrary that the vehicle parts were located outside, but near the house. Moreover, a defendant may attack an affidavit on the basis of misstatement of material facts. *Commonwealth v. Wiggins*, 239 Pa.Super. 256, 361 A.2d 750 (1976).

"On 2 Feb 76, the subject BEST was observed leaving the 'Old Mill' with a red dump truck. The vehicle was loaded with automobile parts, mostly fenders and assorted body parts.

"On 6 Feb 76, the subject BEST was again observed leaving the area operating a red dump truck again loaded with automobile body parts.

"On 9 Feb 76, the subject BEST and another black male were observed leaving the warehouse with automotive parts loaded on the back of a 1967 Ford Tk., bearing Penna. registration CL47520. the vehicle is issued to Rovanna BEST. . . .

"The informant is a concerned citizen who is a respected member of the community."

Based upon this information, the magistrate issued a search warrant for the Old Mill on February 10, 1976. The magistrate issued six subsequent search warrants for the Old Mill premises which the police executed on the following dates: February 11, 12, 18, 26, March 16, and 19, 1976. All subsequent warrants specifically incorporated the probable cause recited in the initial warrant.

Upon execution of the initial search warrant on February 10, 1976, appellees Vernon Mayes, Tyrone Elwood Scott, and Nathaniel Best-Bey were found on the Old Mill premises and arrested. Appellee Rovanna Best-Bey was arrested at a later date. At the conclusion of the hearing on July 23, 1976, the lower court granted the motion to suppress and the Commonwealth's appeal followed.

The Commonwealth contends that the lower court erred in suppressing evidence obtained pursuant to the February 10, 1976 search warrant and all subsequent warrants. According to the Commonwealth, the February 10, 1976 warrant alleged sufficient probable cause to justify its issuance. Appellees, however, respond, and the lower court so found, that the February 10, 1976 warrant did not allege sufficient probable cause because: (1) much of the information alleged in the warrant stemmed from illegal police surveillance of

appellees' leased premises and this could not be considered in determining probable cause, and (2) the remainder of the information in the warrant did not sufficiently establish probable cause under the standards of *Aguilar-Spinelli.* I will first analyze whether the lower court erred in refusing to consider all the information obtained as a result of the allegedly illegal pre-February 10, 1976 surveillance. After I make this determination, I will evaluate whether the remaining information in the February 10, 1976 warrant sufficiently established probable cause.

The Commonwealth first contends that the pre-February 10, 1976 surveillance was not illegal because the appellees did not have a reasonable expectation of privacy on the Old Mill premises. In *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967), the United States Supreme Court stated that ". . . the Fourth Amendment protects people not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." (Citations omitted). See also *U.S. v. Rubin,* 343 F.Supp. 625 (E.D.Pa.1972), *vacated,* 474 F.2d 262 (3d Cir. 1973), *cert. denied Agran v. United States,* 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973); *Commonwealth v. Strickland,* 457 Pa. 631, 326 A.2d 379 (1974); *Commonwealth v. Cooper,* 362 Pa.Super. 1041, 362 A.2d 1041 (1976). Consequently, ". . . once it is established that an individual is where he has a reasonable expectation of privacy, he is entitled to be free from unreasonable intrusions by the government." *Commonwealth v. Swanger,* 453 Pa. 107, 110, 307 A.2d 875, 877 (1973) (Citations omitted). "The test of *any* search, *anywhere, any* time, is the Fourth Amendment. This Constitutional mandate is premised, not upon the general character of the place searched, but whether or not the individuals had a reasonable expectation of privacy." (Emphasis in the original). *United States v. Rubin,* supra, at 628. Thus, the Fourth Amendment's safeguards extend to premises occupied for

business or commercial purposes as well as to those occupied for residential or dwelling purposes. *Kroehler v. Scott,* 391 F.Supp. 1114 (E.D.Pa.1975); *United States v. Wolfe,* 375 F.Supp. 949 (E.D.Pa.1974); *United States v. Zarra,* 258 F.Supp. 713 (M.D.Pa.1966). Moreover, "absence of a physical intrusion does not per se demonstrate that a police search was reasonable . . . ." *Commonwealth v. Soychak,* 221 Pa.Super. 458, at 462, 289 A.2d 119, 122 (1972). If an individual's reasonable expectation of privacy is violated, the intrusion is unreasonable and violative of the Fourth Amendment's safeguards, notwithstanding the absence of a physical intrusion.

"The Fourth Amendment does not prohibit warrantless searches, but rather unreasonable searches." *United States v. Samuels,* 374 F.Supp. 684, 685 (E.D.Pa.1974). What constitutes a reasonable search cannot be determined by a fixed formula, but rather must be based on the facts and circumstances of each particular case. *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Commonwealth v. Soychak,* supra. Although an evaluation of the entire context surrounding a search may reveal exigent circumstances which render a warrantless search reasonable, " 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' The exceptions are 'jealously and carefully drawn,' there must be 'a showing by those who seek the exemption * * * that the exigencies of the situation made that course imperative.' '[T]he burden is on those seeking the exemption to show the need for it.' " *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971) (Citations and footnotes omitted).

Applying these principles to the facts of the instant case, I conclude that the police surveillance of appellee's leased property constituted a warrantless, unreasonable search which violated appellees' reasonable expectation of privacy. After receiving the "tip" from the anonymous informant,

the police officers made no attempt to enter the building on the Old Mill premises until obtaining a search warrant on February 10, 1976. However, they conducted a nocturnal surveillance of the premises on at least six separate occasions during a six week period by coming onto the Old Mill property, observing the activities of appellees as they entered and exited the building, and looking into windows. Moreover, the officers obtained VINs by shining flashlights under a canvas which covered engine parts. Although the property was not surrounded by a fence, there was no indication that appellees knowingly exposed the property to the public such as to avoid the Fourth Amendment's protections. *Commonwealth v. Cooper*, supra. Finally, Trooper Hennessey conceded that the police conducted their surveillance at night in order to avoid detection. Thus, had the police though the premises were open to the public, they would not have found clandestine entry to be necessary.[9] In sum, I conclude that appellees' reasonable expectation of privacy was violated by the warrantless, nighttime entry on the Old Mill premises. Consequently, the information obtained as a result of the illegal surveillance cannot constitute a basis for probable cause.

The Commonwealth's next contention is that even if we refuse to consider the information obtained as a result of the surveillance, the information which the police received from the informant provided sufficient probable cause to justify the issuance of the search warrant. I conclude that the information fails to satisfy either prong of the *Aguilar-Spinelli* test.

" ' . . . [A] magistrate's determination of probable cause justifying the issuance of a warrant must be supported by an affidavit [and, if necessary, sworn testimony] that discloses the underlying circumstances from which the

9. The Commonwealth does not allege the existence of any exigent circumstances to justify the warrantless search. Although in part of its brief the Commonwealth attempts to argue that the evidence was legally seized because it was in plain view, the Commonwealth waived this argument by failing to raise it in its answer to appellees' motion to suppress. See footnote 2, supra.

affiant has concluded that his information is reliable and that it must contain a statement of the underlying circumstances "to enable the magistrate independently to judge of the validity" of the affiant's conclusion that the things to be seized are where he says they are.' *United States v. Bailey*, 458 F.2d 408, 411 (9th Cir. 1972) (quoting from *Spinelli*, supra [393 U.S. 410] at 413, 89 S.Ct. [584] at 587, [21 L.Ed.2d 637]) (emphasis added).

"Although the information supplied the magistrate '. . . must be tested with a commonsense, nontechnical, ungrudging, and positive attitude, . . .', *Rosencranz v. United States*, 356 F.2d 310, 314 (1st Cir. 1966); *United States v. Ventresca*, 380 U.S. 102, 108–09, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965), the information *must be* sufficient '. . . to enable the magistrate independently to judge of the validity of the informant's *conclusion that the narcotics were where he said they were*.' *Spinelli*, supra at 413, 89 S.Ct. at 587 (emphasis added)." *Commonwealth v. Simmons*, 450 Pa. 624, 629, 301 A.2d 819, 822 (1973).

Although hearsay information supplied by an anonymous informer may provide probable cause, *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), there must be two additional types of information before probable cause can be established. First, in order to assure that the informer's information is not merely an unsupported rumor, the affiant must know the underlying circumstances from which the informer concluded that the suspect participated in the crime. Second, in order to reduce the possibility that a tip meeting the first standard is not merely a well-constructed fabrication, the affiant must have some reasonable basis for concluding that the informant was credible and reliable. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Betrand Appeal*, 451 Pa. 381, 303 A.2d 486 (1973); *Commonwealth v. Simmons*, supra. Thus, "a search warrant may not constitutionally issue upon an affidavit which fails to set forth substantiating facts and

circumstances from which the magistrate might make an independent and detached appraisal of the probability that a crime had been or was being committed." *Commonwealth v. Swierczewski*, 215 Pa.Super. 130, 257 A.2d 336 (1969).

Applying this two-part test to the facts of the instant case, it becomes apparent that there was no probable cause to support the issuance of the February 10, 1976 search warrant. First, the required underlying circumstances to support the informant's conclusion that criminal activity was occurring are absent. The tip came from an unidentified informant who did not demonstrate personal knowledge of any criminal activity. Rather, the informant's tip was a mere conclusion that "criminal activity was [taking place] at a large warehouse in Salford Station, Montgomery County," and that "several new trucks and motor vehicles were seen being taken into the building and bright lights and smoke being emitted from the shop as though the vehicles were being dismantled." This statement is nothing more than a mere suspicion of criminal activity which is, in itself, insufficient to sustain the issuance of a warrant. *Com. v. Simmons*, supra. Further, the affiant failed to either recount the manner in which the informant obtained his information or to describe the alleged criminal activity in detail based on personal observation, in order to provide supporting factual circumstances for the informer's tip. *Commonwealth v. Samuels*, 235 Pa.Super. 192, 340 A.2d 880 (1975). The police officer did not observe bright lights or smoke or any evidence of criminal activity on the premises to corroborate the informant's conclusion. Finally, even if the warrant recited any details corroborating a conclusion of criminal activity, any information obtained as a result of police surveillance prior to the issuance of the warrant could not provide substantiation for the informant's tip because such information was the result of an illegal search. Because the warrant lacks the requirement of underlying circumstances to support the informant's conclusion, the warrant fails to satisfy the first part of the *Aguilar-Spinelli* test.

Second, the warrant failed to present a reasonable basis from which the affiant could conclude that the source of the information was reliable. The warrant stated only that "the informant is a concerned citizen who is a respected member of the community." Neither the warrant nor a supporting affidavit demonstrated any indicia of reliability, such as personal knowledge of the informant, past reliability, or corroborating sources, to support the informant's tip. *Commonwealth v. Samuels*, supra. Thus, the record is devoid of any underlying circumstances providing a reasonable basis to believe that the informant himself was a credible person and not merely an individual fabricating a story. Consequently, the second part of the *Aguilar-Spinelli* test is also lacking.

Because the February 10, 1976 warrant fails to satisfy the two-pronged *Aguilar-Spinelli* test, and because we refuse to consider the information obtained as a result of the illegal surveillance, I conclude that the warrant lacks the requisite probable cause to justify its issuance. All the subsequent warrants specifically depended upon the probable cause recited in the initial warrant. Although inclusion of illegally obtained evidence will not invalidate a search warrant if the warrant is also based upon other valid sources sufficient to constitute probable cause, *United States v. Sterling*, 369 F.2d 799 (3d Cir. 1966), *Commonwealth v. Soychak*, supra, the subsequent warrants in the instant case do not present any additional sources constituting probable cause. Therefore, the lower court correctly suppressed all evidence obtained during searches of the Old Mill on or after February 10, 1976.

In conclusion, I would hold that the Commonwealth violated appellees' Fourth Amendment rights by intruding upon appellees' reasonable expectation of privacy and by failing to provide sufficient probable cause to justify the issuance of a valid search warrant. Accordingly, I would affirm the lower court's suppression order.

I dissent.