384 A.2d 1280

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Howard W. CURTIS, Jr.**

Superior Court of Pennsylvania.

Submitted Nov. 14, 1977.

Decided April 13, 1978.

David B. Hartman, Assistant District Attorney, and Thomas G. Saylor, Jr., First Assistant District Attorney, Somerset, for Commonwealth, appellant.

Dean Austin Bowman, Somerset, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant, the Commonwealth, contends that the lower court should not have suppressed the results of a blood alcohol test. According to the Commonwealth, appellee, charged with involuntary manslaughter[1] and driving while under the influence of liquor,[2] knowingly and voluntarily consented to the performance of this test. The Common-

1. The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973; 18 Pa. C.S. § 2504.

2. The Vehicle Code, Act of April 29, 1959, P.L. 58, § 1037; 75 P.S. § 1037. The Vehicle Code has been amended since the date of the instant incident. See The Vehicle Code, Act of June 17, 1976, P.L. 162, No. 81, § 1, eff. July 1, 1977; 75 Pa. C.S. § 3731, which now prohibits driving under the influence of alcohol.

wealth also asserts that even if we determine that appellee did not knowingly and voluntarily consent to the blood alcohol test, we should either require appellee to agree to the admission of the blood test results or instruct the lower court to admit evidence of appellee's refusal to agree to the admission of the test results. We affirm the lower court's suppression order.[3]

At approximately 10:10 p.m. on April 29, 1976, a vehicle operated by appellee collided with another vehicle driven by one Channing D. Pollock on Route 31 in Somerset Township, Somerset County. The crash killed Pollock and seriously injured appellee. An ambulance transported appellee to the Somerset Community Hospital. At approximately midnight, a doctor, acting at the direction of Pennsylvania State troopers, authorized a lab technician to remove a blood sample from appellee for the purpose of determining the level of alcohol in appellee's bloodstream. Analysis of the sample revealed a blood alcohol count of .15, a level which raised a legal presumption of intoxication.[4] On June 28,

3. *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304 (1963), cert. denied, 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1963), instructs us that the Commonwealth may only appeal a pre-trial order suppressing certain evidence when two requirements are satisfied: (1) the suppression order must effectively terminate or substantially handicap the prosecution, *see also Commonwealth v. Barnett,* 471 Pa. 34, 369 A.2d 1180 (1977), and (2) the appeal must involve a pure question of law. We note that the first requirement has been satisfied: the Commonwealth has alleged that the suppression order will substantially prejudice the prosecution, and the record of the suppression hearing fully supports this assertion. *Commonwealth v. DeFelice,* 248 Pa.Super. 516, 375 A.2d 360 (1977). We also believe that the second requirement has been fulfilled. The Commonwealth's brief argues that there was no evidentiary basis for the lower court's conclusion that although appellee consented to the blood test, this consent was not voluntary and knowing. We will review the lower court's ruling on the issue of the validity of the consent for the limited purpose of determining whether as a matter of law there was any evidentiary basis on the record for the lower court's holding. *See also, Commonwealth v. Youngblood,* 453 Pa. 225, 307 A.2d 922 (1973); *Commonwealth v. Howe,* 246 Pa.Super. 7, 369 A.2d 783 (1976).

4. The Vehicle Code, supra, § 624.1(c)(3), added July 28, 1961, P.L. 918, § 1, as amended, Act of July 31, 1968, P.L. 758, No. 237, § 1; Act of Dec. 22, 1969, P.L. 392, § 1; 75 P.S. § 624.1(c)(3). This Act has

1976, Somerset County police authorities filed a criminal complaint which charged appellee with involuntary manslaughter and with driving while under the influence of alcohol.

On October 18, 1976, appellee filed an application to suppress the blood test results which allegedly were obtained in violation of appellee's constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution and the applicable law of Pennsylvania. In particular, the application alleged that the police did not have probable cause to perform a blood test on appellee, that the search was not incident to a lawful arrest, and that the appellee did not knowingly and voluntarily consent to the blood test because appellee was convulsing, vomiting, and without knowledge of where he was when the tests were conducted. Also, appellee alleged that the two hour lapse between the accident and the blood test vitiated the reliability and probative value of the blood test. On October 25, 1976, the Commonwealth filed an answer to appellee's application. The answer generally denied that appellee's constitutional rights had been violated.

On October 26, 1976, the Somerset County Court of Common Pleas conducted a hearing on appellee's suppression application. At the hearing, the Commonwealth presented three witnesses, two state police troopers and a laboratory technician, and appellee presented two witnesses, himself and his wife. State trooper Daniel Laughlin testified on direct examination that he investigated the April 29, 1976 accident which precipitated the charges in the instant case. He observed the Somerset County ambulance crew remove appellee from his vehicle and transport him to the hospital. After investigating the accident scene, he and another state trooper, Corporal Benini, proceeded to the Somerset Hospital where they arrived at 11:45 p.m., approximately 1½ hours after the accident. They went to the Emergency Room to

recently been amended once again: See The Vehicle Code, Act of June 17, 1976, P.L. 162, No. 81, § 1 eff. July 1, 1977. 75 Pa. C.S.A. § 1547.

question appellee about the accident. Trooper Laughlin smelled a distinct odor of alcohol on appellee's breath. In response to questioning, appellee admitted drinking a couple of beers earlier that evening. After advising appellee of the purposes of a blood test and of his right to refuse to participate in such a test, Trooper Laughlin inquired whether appellee would consent to the extraction of a blood sample. Appellee responded affirmatively. However, Trooper Laughlin also stated on direct examination that appellee did not seem to know where he was during their conversation. At the conclusion of the conversation, a lab technician took a blood sample from appellee.

On cross-examination, Trooper Laughlin testified that appellee "was in pretty bad shape" during their discussion. (Notes of Suppression Hearing, hereinafter N.S.H. p. 9). ". . . [H]is face was distorted. I believe he had lost quite a few teeth. His jaw appeared to be broken by the way he was talking and moving his mouth. And he wasn't exactly in the best condition." (N.S.H. p. 9). Moreover, appellee was convulsing and vomiting. Trooper Laughlin also asserted that appellee signed a hospital consent form which provided permission for the extraction and analysis of a blood sample. When appellee signed it, appellee was lying on his back in a hospital bed.

The lower court then questioned Trooper Laughlin. The following interchange occurred:

"Q. And did I understand you to say that he didn't know where he was at when you talked to him?

"A. That's correct. He had told me that he couldn't figure out where he was or why he was there. He looked at Corporal Benini and myself and said: 'What are you doing here? Why are you here?

"Q. He didn't comprehend that he was even in the hospital?

"A. No, not at that time.

"Q. Do you think he comprehended his constitutional rights if he didn't comprehend where he was at at the time?

"A.   That I could not say.

"Q.   Do you think he comprehended the release that the hospital had him sign at that time?

"A.   I did not know [Your Honor].

"Q.   Do you have an opinion as to whether or not he comprehended either the release that he signed, the waiver, or the questioning?

"A.   I believe he was reasonably aware of what was going on.

"Q.   But he didn't know where he was at?

"A.   He didn't realize that he had been involved in an accident."
(N.S.H. 13).  This questioning concluded Trooper Laughlin's testimony.

Corporal Frank Benini of the Pennsylvania State Police testified next.  He corroborated Trooper Laughlin's account of the investigation and interview in all material respects. In Corporal Benini's estimation, appellee's consent was voluntary because appellee ".   .   . in his recollection and during the interview, he knew all about himself, what he did that evening, where he was, who he was with, what he was doing in Somerset.  In other words, he remembered everything except the accident itself.  He had no recollection of ever being involved in an accident."  (N.S.H. 17).

The Commonwealth then presented Dorthea Legarski, laboratory technician at Somerset Hospital who testified that she extracted the blood sample from appellee.  Although she did not see appellee sign a consent form, hospital policy required a patient's signature on a consent form before the performance of a blood test.  Appellee co-operated with the test by holding out his arm.  The Commonwealth concluded its case by presenting a consent form purportedly signed by appellee.  The signature at the bottom of the form is illegible.

Appellee testified that he had absolutely no recollection of the accident or any occurrence at Somerset Community

Hospital on the night of April 29, 1976. Before the accident, he last remembered his activities on the evening of April 28, 1976. After the accident, he first remembered a trip in an ambulance on April 30, 1976, to a Pittsburgh hospital.

Appellee's wife testified that she went to the Somerset Community Hospital on the night of April 29, 1976, after she learned of her husband's accident. She arrived a few minutes after midnight. Apparently, the blood test had already been performed because no one mentioned the test during her visit. Appellee asked his wife to tell him where he was and if he had been in an accident; she answered both questions. She also testified that whenever an officer asked appellee a question, he would respond: "Yes, Sir". In response to a question by the lower court, appellee's wife catalogued her husband's injuries: a broken jaw, broken bones in the vicinity of the eyes, a dislocated left hip, cracked ribs, and two broken feet. This testimony concluded the hearing.

On October 27, 1976, the lower court granted appellee's application to suppress the results of the blood alcohol test. The lower court specifically found that although appellee did consent to a blood test, this consent was not a knowing and voluntary one.[5]

Appellant, the Commonwealth, first contends that there is no evidentiary support for the lower court's determination that appellee's consent was not knowing and voluntary. The issue of whether a defendant's consent to a blood alcohol test is knowing and voluntary is a question of fact which must be determined in each case from the totality of the circumstances. See *Schneckloth v. Bustemonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Commonwealth v. Watkins,* 236 Pa.Super. 397, 344 A.2d 678 (1975); *Commonwealth v. Kelly,* 235 Pa.Super. 299, 341 A.2d 141 (1975). The Commonwealth bears the burden of production and persuasion on the issue of whether a defendant has knowingly and

5. Moreover, the court ruled that the test had not been conducted incident to a lawful arrest. Indeed, the police did not arrest appellee until 13 days after the completion of the blood test analysis.

voluntarily consented to an abandonment of his rights. *See* Pa.R.Crim.P. 323(h); 19 P.S. Appendix, and accompanying Comment; *Commonwealth v. Yount,* 455 Pa. 303, 314 A.2d 242 (1974). In reviewing the lower court's determination that appellee did not voluntarily and knowingly consent to a blood alcohol test, we must consider the evidence adduced at the suppression hearing in the light most favorable to appellee and must give appellee the benefit of all reasonable inferences arising from the evidence. *Commonwealth v. Kichline,* 468 Pa. 265, 361 A.2d 282 (1976). Applying the above standards, we must now determine whether the record reveals any evidentiary basis for the lower court's conclusion that appellee's consent was not given voluntarily and knowingly. We believe that the record amply supports the lower court's conclusion. We will accept, as did the lower court, the police officers' uncontradicted testimony that appellee in fact consented to a blood alcohol test. However, the record supports the lower court's determination that this consent was not voluntary and knowing. Appellee had been seriously injured; he had a broken jaw, two broken feet, a dislocated hip, broken facial bones, and cracked ribs. He convulsed and vomited during his interview with the police officers. Trooper Laughlin admitted that appellee had no idea where he was or whether he had been involved in an accident. The testimony of appellee's wife directly corroborated this assessment. In sum, appellee was unable, physically or mentally, to understand the meaning of a consent to a blood test. *Compare Commonwealth ex rel. Gaito v. Maroney,* 206 Pa.Super. 113, 210 A.2d 907 (1965) (Dissenting Opinion by Hoffman, J.), reversed, 422 Pa. 171, 220 A.2d 628 (1966). Accordingly, we find that the record fully supports the lower court's conclusion that appellee's consent to the blood test was not proffered knowingly and voluntarily.

[5] Appellant Commonwealth next contends that even if we approve the lower court's ruling that appellee did not voluntarily and knowingly consent, we should still require appellee to either agree to the admission of the test results or to have his refusal to agree to the admission of the test results introduced. Because the Commonwealth has not

presented this claim to the lower court for its consideration, we will not consider it now. *Commonwealth v. Romberger,* 474 Pa. 190, 378 A.2d 283 (1977). If the Commonwealth does attempt to proceed with a prosecution against appellee, it can request the trial court to consider this argument at that time. Accordingly, we affirm the lower court's order suppressing the results of the blood alcohol test.[6] Order affirmed.

PRICE, J., dissents.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

6. We note that the Commonwealth has not argued, either to the lower court or to us, that a basis independent of the alleged voluntary and knowing consent exists for the introduction of the blood tests. In particular, the Commonwealth does not challenge the lower court's conclusion that the search and seizure involved in the instant blood test could not be justified as incident to an arrest which occurred 13 days after the test. *See Commonwealth v. Murray,* 441 Pa. 22, 271 A.2d 500 (1970). Moreover, the Commonwealth does not argue that the blood test was admissible pursuant to The Vehicle Code, supra; 75 P.S. § 624.1(f) which authorizes a blood test when "for any reason a person is physically unable to supply enough breath to complete a chemical [breathalyzer] test."