436 A.2d 1028

COMMONWEALTH of Pennsylvania,

v.

Morris E. THOMPSON, Appellant.

Superior Court of Pennsylvania.

Argued March 11, 1980.

Filed Oct. 30, 1981.

Karl K. Baldys, Williamsport, for appellant.

Robert F. Banks, Assistant District Attorney, Williamsport, for Commonwealth, appellee.

Before SPAETH, BROSKY and VAN der VOORT, JJ.

PER CURIAM:

Appellant was convicted of driving under the influence of alcohol and recklessly endangering another. The charges arose out of an accident which occurred on May 5, 1977 in Williamsport.

Thompson described the accident as resulting from a dip in the highway causing his car to "bottom out" and subsequently lose control. Witnesses to the accident alter appellant's story only to the extent that the automobile bottomed out not because of a dip in the road—though a dip was present—but because of the excessive speed at which the vehicle was driven.

·Appellant suffered numerous injuries. Thompson's wife, who was also injured in the accident, stated her husband was incoherent when taken to the hospital, though conscious. After appellant's injuries were stabilized, police requested that a blood test be given him to determine the amount of alcohol in his body. Thompson asserts he never gave any consent for blood to be taken. Hospital records include a consent form signed by appellant. Thompson testified he had several beers and a shot before the accident.

A motion was presented to suppress evidence of the blood test on August 4, 1977. A hearing was scheduled for August 17, 1977, but the Commonwealth requested and received a continuance because the investigating police officer was suspended and unavailable. The hearing was postponed to the next term of court.

The Commonwealth did not call the case at the next term but waited until the subsequent term to request a suppression hearing be rescheduled. It was scheduled for November 2, 1977. At that hearing, the investigating officer gave

testimony, however, was once again unavailable for trial which would have been held between November 8 and November 11.

The Commonwealth received an extension of time under Pennsylvania Rule of Criminal Procedure 1100 (hereinafter Rule 1100) on November 10, 1977. The original Rule 1100 date—November 14, 1977—was extended to the December trial term.

At trial, the judge allegedly incorrectly instructed the jury. "The [appellant] objected to the Judge's charge which seemed to state that a finding of driving under the influence would result in a conviction of recklessly endangering." Appellant's brief, page vii.

Thompson presents four issues for our resolution. First, did the trial court properly extend the time for trial under Rule 1100? Second, did the trial court properly refuse to suppress evidence of the blood test? Third, was the trial judge's instructions proper. Fourth, was there sufficient evidence to convict Thompson of recklessly endangering?

I.

Rule 1100(a)(2) provides:

Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint if filed.

■ The Commonwealth must prove by a preponderance of the evidence that it acted with due diligence to bring the case to trial. *Commonwealth v. Ehredt*, 485 Pa. 191, 401 A.2d 358 (1978); Rule 1100(c).

The Commonwealth must sustain its burden on two grounds. First, whether, in fact, their case required to be postponed because of their witness' hospitalization. Second, why it did not commence trial during the week of October 3, 1977 or the trial term of October 31 to November 8, 1977.

■ We dispense with the second contention very easily. Our function on review is not to look through the special

vision of hindsight and find that the Commonwealth had an opportunity to come to trial and failed; rather, we view the Commonwealth's actions as circumstances confronted it. Certainly, the Commonwealth anticipated coming to trial before November 15, 1977. We will not hold the Commonwealth lacked due diligence simply because their witness became unexpectantly unavailable.

The rule was extended because the Commonwealth witness was hospitalized. An extension may be granted under such circumstances because that situation was beyond the Commonwealth's control. The unavailability of the Commonwealth's witness occurred despite its due diligence. *Commonwealth v. Brown*, 252 Pa.Super. 365, 381 A.2d 961 (1977).

## II.

In *Commonwealth v. Curtis*, 253 Pa.Super. 163, 384 A.2d 1280 (1978)—a case involving the taking of blood for a blood test—we were confronted with a similar issue involving the validity of appellant's consent to a search. The appellant alleged the search was "in violation of [his] constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution and the applicable state law." Id., 253 Pa.Super. 166, 384 A.2d 1282. We stated:

The issue of whether a defendant's consent to a blood alcohol test is knowing and voluntary is a question of fact which must be determined in each case from the totality of the circumstances. See *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Commonwealth v. Watkins*, 236 Pa.Super. 397, 344 A.2d 678 (1975); *Commonwealth v. Kelly*, 235 Pa.Super. 299, 341 A.2d 141 (1975).

This court has recently discussed this issue in *Commonwealth v. Daniels*, 280 Pa.Super. 278, 421 A.2d 721 (1980), where we presented in discussion:

The Supreme Court [also] stated in *Schneckloth v. Bustamonte*, [supra.]: "[w]hen a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the

burden of proving that the consent was in fact, freely and voluntarily given." Id. [412 U.S.] at 222, 93 S.Ct. at 2045. In *U.S. v. Ruiz-Estrella*, 481 F.2d 723 (1973), the Second Circuit stated:

... While the question of voluntariness is one that must be resolved through an examination of "the totality of all the circumstances" [*Schneckloth v. Bustamonte*, supra, [412 U.S.] at 227, 93 S.Ct. at 2048] the [Supreme] Court emphasized that the prosecution's burden could not be met by *only showing acquiescence to a claim* of lawful authority, id. at 233, 93 S.Ct. 2041 ... (emphasis added)

The test for the validity of consent has been given further explanation in *Virgin Islands v. Berry*, 385 F.Supp. 134 (1974) where the court set the following guide to the *Schneckloth* test.

... Factors to be considered by a court in assessing the voluntariness of the consent include the nature of the on the scene questioning, the subjective state of mind of the person who consents, his educational background, and the presence or lack of probable cause to arrest or search the subject.

Id. at page 137.

Id., 280 Pa.Super. at 282, 421 A.2d at 723.

■ At the suppression hearing, the trial court determined the blood test was executed without violating appellant's constitutional rights, Pa.R.Crim.P. 323(i), and that the Commonwealth had proved this by a preponderance of the evidence. Pa.R.Crim.P. 323(h). *Commonwealth v. Yount*, 455 Pa. 303, 314 A.2d 242 (1974). Our responsibility is to determine if the record supports the findings of the court below. We must determine the legitimacy of inferences and legal conclusions drawn by the court below from these findings. *Commonwealth v. Goodwin*, 460 Pa. 516, 521, 333 A.2d 892, 895 (1975). Since the suppression court determined in the instant case that the evidence was admissible, we shall consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the

context of the record as a whole, remains uncontradicted. *Commonwealth v. Brown*, 473 Pa. 562, 566, 375 A.2d 1260, 1262 (1977). We note, however, that this rule is subject to the exception, applicable here, that whether certain findings by the suppression court are supported by defense testimony, we shall accept those findings as true even though they are in conflict with evidence presented by the prosecution. *Commonwealth v. Brown*, supra, 473 Pa. at 566, 373 A.2d at 1262.

In the instant case, Thompson sustained various injuries, broken ribs, lacerations to the forehead, and others; he was described by his wife, police and hospital staff as incoherent at times, in fact, his wife was asked to give consent because he was incoherent. However, the appellant apparently initialled a consent form; and the nurse who obtained the initials described him as conscious and coherent at that time. The police testified they sought to have the test completed because they sensed that alcohol played a role in the accident. These facts do not present a clear picture.

Our Supreme Court has stated in *Commonwealth ex rel. Gaito v. Maroney*, 422 Pa. 171, 220 A.2d 628 (1966):

It is, of course, quite possible that the challenged confession may have been obtained while appellant was completely lucid and mentally competent. However, our judgment as to the effect of the circumstance under which the confession was obtained upon appellant's mental capacity to confess must by its nature be one based upon probabilities. See *Blackburn v. Alabama*, supra [361 U.S. 199], at 208, 80 S.Ct. [274] at 281 [4 L.Ed.2d 242]. When the pertinent circumstances are considered—the shock and weakened condition engendered by his wound, the extensive and serious nature of the surgery performed upon him, the quantity of anesthetic and medication administered to him, the occasional lapses into semi-consciousness and incoherence—the probability that appellant's confession was the product of a rational intellect and a free will appears remote. Cf. *Blackburn v. Alabama*, supra, at 207–208, 80 S.Ct. at 280–281.

Thus, our determination is essentially one involving drawing the line at which the circumstances surrounding an apparently validly obtained consent renders that consent invalid.

In *Commonwealth v. Curtis,* supra—a case in which facts were similar to ours—we held that the consent obtained by police in order to perform a blood test was faulty. That case involved an accident in which Curtis suffered several injuries. Police testified that they could smell a distinct odor of alcohol from Curtis' breath. Curtis, like Thompson, admitted to having a *few* beers before the accident. Curtis responded to the police request for consent to do a blood test affirmatively. However, like Thompson, there was accompanying evidence portraying Curtis as incompetent. Curtis was described by police as being "in pretty bad shape," id., 253 Pa.Super. at 167, 384 A.2d 1283, while Thompson was depicted by an officer as being in "a state of shock." Unlike *Curtis,* supra, where testimony specifically correlated Curtis' incoherence with the time of the consent-seeking encounter—here—we are supplied no timetable as to the coexistence of appellant's coherence or incoherence and his apparent consent.

Like *Curtis,* supra, it was hospital policy to have a person sign a consent form before blood was let, but as in *Curtis,* supra, the hospital staff had no recollection of the giving of the signature and like *Curtis,* supra, Thompson's initials were illegible. In both cases each man testified they had no recollection of giving consent. The wives of Curtis and Thompson each corroborated their husband's stories.

These cases are so very similar that it is clear that just as Curtis' consent was invalid so must we find Thompson's. We do not find fault with the procedures followed by either the hospital or police, however, the attendant circumstances make a conscious, voluntary consent improbable. Therefore, we must find that consent invalid. *Commonwealth ex rel. Gaito v. Maroney,* supra.

■ Appellant also argues that the instruction given the jury allegedly regarding the imputation of recklessness from

a finding of intoxication was improper. This is without merit.

Finally, appellant asserts that the trial court had insufficient evidence upon which to convict him of recklessly endangering another. The Commonwealth was required to prove beyond a reasonable doubt that the appellant acted in a manner which involved a conscious disregard of risk.[1]

■ The standard used by this court when we review the sufficiency of evidence is:

> [T]he test to be employed is whether the finder of fact could reasonably have found all elements of the crime charged had been proved beyond a reasonable doubt. *Commonwealth v. Roux*, 465 Pa. 482, 485, 350 A.2d 867, 869 (1976).

*Commonwealth v. Richbourg*, 260 Pa.Super. 438, 394 A.2d 1007 (1978). This decision is made by us in a light most favorable to the Commonwealth. *Commonwealth v. Harper*, 485 Pa. 572, 403 A.2d 536 (1979).

The evidence had at trial which we have not already held impermissibly admitted—the blood test results—included evidence that Thompson was driving at a high speed, that his car "bottom[ed] out" while passing through an underpass and that a passenger in his car, the driver of another car and he were injured. There are all circumstantial facts upon which the trial court may base its verdict only where: " 'the theme of guilt must flow from the facts and circumstances proved and be consistent with them all.' *Commonwealth v. Clinton*, 391 Pa. 212, 218, 137 A.2d 463, 466 (1958)." As appears in *Commonwealth v. Simpson*, 436 Pa. 459, 260 A.2d 751 (1970).

In light of our determination that the blood test results were improperly admitted into evidence, we are unable to find, from a reading of the entire record, that the trial court drew its decision from facts and circumstances consistent

1. 18 P.S. 2705, 18 P.S. 302(3).

with a finding of guilt beyond a reasonable doubt. Thus, it did not have sufficient evidence to reach its decision.

Judgment reversed and remanded for new trial.

VAN der VOORT, J., dissents.