460 A.2d 767

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Edward A. WALSH.**

Superior Court of Pennsylvania.

Argued April 22, 1982.

Filed April 22, 1983.

Reargument Denied June 20, 1983.

Petition for Allowance of Appeal Denied Nov. 4, 1983.

Vram Nedurian, Jr., Assistant District Attorney, Media, for Commonwealth, appellant.

Eugene F. Jarrell, III, Media, for appellee.

Before WICKERSHAM, BROSKY and WIEAND, JJ.

BROSKY, Judge:

The Commonwealth appeals here from the suppression of the results of a test to measure the alcoholic content of appellee's blood. Appellant contends that appellee's consent to the test was voluntary and knowing. We agree and accordingly reverse the suppression order and remand.

### Factual Background

The accident giving rise to the instant criminal prosecution occurred at approximately 11:30 p.m. on January 18, 1980 on the Commodore Barry Bridge. Appellee, Walsh, was observed driving at an estimated 70 miles per hour on the approach to the bridge, swerving past a car with only 15 feet to spare. On the bridge itself, he continued to weave in and out of traffic at an estimate 85 miles per hour. Walsh then crossed over an empty lane and hit the front fender of Deborah Reitz's car as it came from the opposite direction. Walsh's car continued on for several hundred feet, hit the guard rail and came to a stop. Reitz's car ended up facing the direction from which it had come, its front left side and hood smashed in. Deborah Reitz, aged 26, was pronounced dead at the scene, having suffered multiple head injuries.

Walsh, a 48 year-old man, received facial lacerations and broken ribs and was taken to Crozer Chester Medical Center. A passing motorist who stopped to render assistance did not smell alcohol on Walsh's breath or observe any indicators of intoxication. At the hospital, Walsh's condition was evaluated by a Dr. Gorrell. At the suppression hearing, he testified that Walsh was "awake, coherent and oriented"; that he observed no "neurological deficit"; that there was no indication of a concussion; that there was no sign that Walsh didn't understand what was being said to him; and that appellee stated that he had not been unconscious as a consequence of the accident.

Patrolman Sirisky of the Delaware River Port Authority police went to the hospital and was told by Dr. Gorrell that Walsh was in a physical condition that allowed conversation with him. Sirisky stated at the suppression hearing that his subsequent conversation with Walsh occurred in the following sequence. First, Sirisky gave appellee a *Miranda* warning and was told by Walsh that he understood those rights. Second, he informed Walsh that someone was killed in the accident in which he had been involved. Third, he questioned appellee and heard Walsh's account of the accident. Fourth, the consent form for the alcohol in blood test was explained by Sirisky to appellee.[1] Fifth, Sirisky was present when Walsh signed the consent form and then signed it as a witness himself. The blood sample was then taken from appellee.

Patrolman Sirisky also testified at the suppression hearing that appellee was not under arrest when the blood sample was taken; that at that time Walsh was not suspected (for lack of any knowledge about how the accident had occurred), of having committed a crime or of having violated the Motor Vehicle Code; that he didn't smell any alcohol on appellee's breath or observe that he was under the influence of alcohol.

1. This item comes from Dr. Gorrell's testimony at the suppression. It was neither contradicted nor addressed by the Patrolman's testimony.

A few days later, appellee was arrested and held for court following a preliminary hearing. Informations were then filed on the following charges: Involuntary Manslaughter;[2] Reckless Driving;[3] Driving Vehicle at Unsafe Speed;[4] and Speeding.[5] Appellee pleaded not guilty and filed a motion to suppress the blood test results on the ground that his consent was involuntary in that he did not know that the blood test results were to be used in his criminal prosecution. Following a suppression hearing on June 9, 1980, the court below granted the motion to suppress. The District Attorney took a timely appeal from that order.

## Appealability

■ The threshold issue in this case is the appealability, prior to a trial and conviction, of the suppression order. Quite recently the test to be applied in determining whether a particular suppression order is interlocutorily appealable by the prosecution has been changed. *Commonwealth v. Lapia,* 311 Pa.Superior 264, 457 A.2d 877 (1983) (en banc). The current form of the standard is: "... an order suppressing evidence is appealable when it is apparent from the record that the order terminates or substantially handicaps the prosecution." *Commonwealth v. Lapia,* supra, 311 Pa.Superior at 364, 457 A.2d 877.[6]

■ We find that this standard has been met here and the suppression order is appealable. There being no living witness to the accident itself (other than appellee), the

2. 18 Pa.C.S.A. § 2504.

3. § 3714 Motor Vehicle Code.

4. § 3361 Motor Vehicle Code.

5. § 3362 Motor Vehicle Code.

6. Thus, *Commonwealth v. Martz,* 259 Pa.Super. 201, 393 A.2d 787 (1978), is overruled and it is no longer necessary for the Commonwealth to allege and treat the termination or substantial handicap. Though it is now moot under the new standard, the Commonwealth did make such an allegation and treatment here.

results of the blood test are quite obviously an important element of the prosecution's case. While the absence of the blood test might not terminate the prosecution, we have no hesitation in concluding that it would at least work a substantial handicap.[7]

## Scope of Review and Burden of Proof

■ The proper scope of appellate review for a case of this type was defined in *Commonwealth v. Curtis*, 253 Pa.Super. 163 at 170, 384 A.2d 1280 at 1284 (1978).

In reviewing the lower court's determination that appellee did not voluntarily and knowingly consent to a blood alcohol test, we must consider the evidence adduced at the suppression hearing in the light most favorable to appellee and must give appellee the benefit of all reasonable inference arising from the evidence.

■ When the evidence is viewed by the appellate court in the manner described above, it must establish the validity of the consent.

When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given.

*Bumper v. North Carolina*, 391 U.S. 543 at 548, 88 S.Ct. 1788 at 1792, 20 L.Ed.2d 797 (1968). The Pennsylvania Rules of Criminal Procedure echo this placement of the burden of proof on the prosecution.

7. The Commonwealth asserts that a forensic pathologist would have extrapolated the blood test results to a 0.09% to 0.1% level at the time of the accident. Appellant's brief goes on to state: "Dr. Catherman would also testify that based on this estimated blood alcohol level, the defendant's motor abilities would have been substantially impaired at the time of the accident." There was also an assertion about testimony that a two truck operator and a paramedic would give that would purportedly be barred if the blood test results were not admitted. While these matters would have been considered under the previous test for appealability (as long as they were not inconsistent with the record), *Commonwealth v. Kunkel*, 254 Pa.Super. 5, 385 A.2d 496 (1978), they are not of record and therefore cannot be considered under the *Lapia* standard. Appellant's brief was filed well before the decision in *Lapia* came down, so the inclusion of this material was not an error on appellant's part.

The Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights.

Pa.R.Crim.Proc. 323(h).

### Arrest

That the taking of blood is a search and seizure subject to the protections of the Fourth Amendment was firmly established in *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

*Commonwealth v. Davenport*, 453 Pa. 235 at 240, 308 A.2d 85 at 87 (1973). See also *Commonwealth v. Funk*, 254 Pa.Super. 233 at 241, 385 A.2d 995 at 999 (1978). Thus, we must determine whether the blood was taken from appellee in accordance with Fourth Amendment requirements.

■ One method of validating this type of search is its occurrence incident to lawful arrest. "And, under certain circumstances, this includes intrusion into a person's body for blood to be analyzed for alcoholic content." *Commonwealth v. Murray*, 441 Pa. 22 at 25, 271 A.2d 500 at 501 (1970). See also *Commonwealth v. Brown*, 225 Pa.Super. 289 at 293, 302 A.2d 475 at 477 (1973). The "circumstances" referred to above are those establishing probable cause for a blood test search.

The interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions on the mere chance that desired evidence might be obtained. In the absence of a clear indication that in fact such evidence will be found, these fundamental human interests require law officers to suffer the risk that such evidence may disappear unless there is an immediate search.

*Schmerber v. California*, 384 U.S. 757 at 769–70, 86 S.Ct. 1826 at 1835, 16 L.Ed.2d 908 (1966).

■ However, this avenue cannot be used to legitimate the instant search. Patrolman Sirisky testified that appellee was not under arrest and that there was no probable

cause for arrest or to believe that appellee was intoxicated. Further, appellant's brief concedes that this is the case and relies on appellee's consent to establish the propriety of the search. We agree that the record does not establish that, at the time the blood was taken, that appellee was under arrest or that there was probable cause for arrest or for a blood test search.

Since no warrant authorized the search,[8] the only remaining method of validating the search is the one appellant argues occurred—a valid consent.

### Consent

■ One method of validating a search is consent. *Zap v. United States*, 328 U.S. 624 at 628, 66 S.Ct. 1277 at 1279, 90 L.Ed. 1477 (1964). See also *Commonwealth v. Anderson*, 208 Pa.Super. 323 at 329, 222 A.2d 495 at 498 (1966). Thus, the legal issue upon which the result in this case will turn is the validity, *vel non*, of the consent given by Walsh.

Appellee contends that his consent was invalid because, when the consent was given, he did not know that the results of the test would be used as evidence in a criminal prosecution rather than for medical treatment purposes. Our analysis will proceed in a two-step fashion.

First, we will consider whether appellee's theory of an invalid consent is legally correct. We conclude that the argument he advances is theoretically sound and would dispose of the case in his favor *if* the facts of the case made it applicable here.

Second, the facts of record will be examined to ascertain whether that type of invalid consent was present here. We find that it was not. The consent being valid, the suppression order is reversed.

### I.

■ In considering appellee's theory of an invalid consent, the starting point is what constitutes a valid consent.

---

8. With the absence of probable cause, a warrant would not have been valid in any event.

Namely, the consent must be voluntarily given. Further, "The issue of whether consent has been voluntarily given is a question of fact which must be determined in each case from the totality of the circumstances." *Commonwealth v. Watkins*, 236 Pa.Super. 397 at 399, 344 A.2d 678 at 679 (1975).

■ In 1973, the United States Supreme Court handed down its opinion in *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854. *Schneckloth* established that it was not necessary to advise the subject of the search of his right to refuse to consent. *Schneckloth*, supra, at 232, 93 S.Ct. at 2049–50. Also,

> While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent.

*Schneckloth*, supra, at 228, 93 S.Ct. at 2048.

At this point, it is important to observe that the issue before us is quite distinct from that in *Schneckloth*. To say, as did *Schneckloth*, that one need not necessarily know of his right to refuse is not the equivalent of holding that one need not know that what is being consented to is a search for criminal prosecution purposes, and not a test for medical treatment purposes.

Thus, our decision here is not inconsistent with *Schneckloth* or other U.S. Supreme Court interpretations of the Fourth Amendment. However, even if it were, it is always our prerogative to circumscribe governmental action more severely than the Federal Courts. In this precise context, the Ninth Circuit Court of Appeals has said: "Constitutional rights may be protected by a state-court system which has developed its own method of testing the voluntariness of consent." *Tremayne v. Nelson*, 537 F.2d 359 (9th Cir., 1976). Justice Eagen wrote: "However, the state has the power to impose standards on searches and seizures higher than those required by the Federal Constitution. See *Cooper v. State of California*, 386 U.S. 58, 87 S.Ct. 788, 17

L.Ed.2d 730 (1967)." *Commonwealth v. Harris,* 429 Pa. 215 at 219 n. 2, 239 A.2d 290 at 292 n. 2 (1968).

 There is ample case law regarding the voluntariness of confessions. Some of it is relevant to our enquiries.

Consent must at least be freely given to be effective. This means there must be a total absence of duress or coercion, express or implied...

*Commonwealth v. Harris,* supra, 429 Pa. at 221, 239 A.2d at 293. See also *Commonwealth v. Burgos,* 223 Pa.Super. 325 at 329, 299 A.2d 34 at 37 (1972).

Further, it is well established that the consent may not be gained through stealth, deceit or misrepresentation, and that if such exists this is tantamount to implied coercion.

*Commonwealth v. Wright,* 411 Pa. 81 at 85, 190 A.2d at 709 at 711 (1963).

If, indeed, appellee was not given any reason to believe that the test results would be used for criminal prosecution purposes, a violation of the mandate against deceit and misrepresentation would have occurred.

 Other cases support the view that a consent can be invalidated if the consenter did not understand what it was he was consenting to. In reviewing consents, pertinent factors have been "the education, intelligence and experience of the consenter..." and thus "if ... defendant's background indicates his understanding of investigating procedures..." *Commonwealth v. Dressner,* 232 Pa.Super. 154 at 158, 336 A.2d 414 at 416 (1975). See also, *Commonwealth v. Dixon,* 226 Pa.Super. 569, 323 A.2d 55 (1974), *U.S. v. Watson,* 423 U.S. 411, 423 at 425, 96 S.Ct. 820 at 828, 46 L.Ed.2d 598 (1976). Any degree of "understanding of investigating procedures" would not be brought to bear if he had no notice that the blood test being consented to was part of a criminal investigation.

 Another line of cases will also prove helpful here. Even after the 1973 *Schneckloth* decision, cases in this Commonwealth continued to require that consents be "intelligent" and/or "knowing." *Commonwealth v. Funk,* su-

pra, 254 Pa.Super. at 239, 385 A.2d at 998; *Commonwealth v. Taylor*, 237 Pa.Super. 212, 352 A.2d 137 (1975). *Commonwealth v. Curtis*, supra, 253 Pa.Super. at 170, 384 A.2d at 1284. These cases did not contest the holding of *Schneckloth*. Therefore, if the inclusion of those words is to be viewed as having any meaning at all, it would be to require at least a minimal sense of awareness of what was going on, vis-a-vis, the consent. Such a minimal sense of awareness would undoubtedly include an apprehension of some relatedness to a criminal investigation.

This conclusion is supported by the case of *Commonwealth v. Curtis*, supra, 253 Pa.Superior at 170, 384 A.2d at 1284.

In sum, appellee was unable, physically or mentally, to understand the meaning of a consent to a blood test.

The Rhode Island Supreme Court also addressed this issue in a somewhat different factual context. In ruling the consent invalid because the purpose of what was consented to was not apparent, the court negated in notes two potential areas of conflict.

What we must determine is whether, by admitting Officer Sullivan into his apartment to use the telephone, defendant consented as well to the entry for the purpose of arresting him.

When seeking to justify a search or seizure on consent grounds, the state must prove that the consent was "freely and voluntarily given." See *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797, 802 (1968); *Palmigiano v. Mullen*, R.I., 377 A.2d 242, 246 (1977). It seems to us that consent to enter one's home to make a routine felony arrest cannot be deemed free or voluntary unless the person said to be consenting is aware of the purpose for which the police seek to enter.[3] See *United States v. Phillips*, 497 F.2d 1131, 1135 n. 4 (9th Cir.1974). The notion of a free and voluntary consent necessarily implies that the person knows what it is he is allowing the police to do.[4]

[3] We are not here dealing with a situation in which an undercover police officer obtains consent to enter a person's home by deception

(that is concerning his true identity) and subsequently arrests the person who allowed him to enter. There is no constitutional infirmity in such a situation. See *Lewis v. United States*, 385 U.S. 206, 208–09, 87 S.Ct. 424, 426, 17 L.Ed.2d 312, 315 (1966).

[4] This is not to say that defendant must have been aware of his right to refuse the police entry. *Schneckloth v. Bustamonte*, 412 U.S. 218, 234, 93 S.Ct. 2041, 2051, 36 L.Ed.2d 854, 867 (1973).

*State v. Bailey*, 417 A.2d 915 at 918–9 (R.I.1980).

Shortly after *Schneckloth*, our State Supreme Court issued its decision in a case on point with the issue before us.

It is obvious that appellant's holding out his arm, without being told either the authority for the doctor's actions or the purpose for which the blood sample was being taken, constituted mere acquiescence, and not a knowing and intelligent waiver of defendant's Fourth Amendment rights.

*Commonwealth v. Davenport*, supra, 453 Pa. at 242, 308 A.2d at 88. However, this opinion commanded only a plurality of three Justices, with an additional three concurring in the result. This has necessitated the above analysis of other case law. When the plurality opinion is viewed in the light of those other cases, the soundness of its conclusion becomes all the more apparent.

Therefore, we conclude that if appellant can establish that he had no notice of the criminal investigative purpose of the blood test, his consent would be invalid.

## II.

While appellee's theory is sound, the facts of this case make that theory inapplicable to him. Using the proper standard of review, it is clear that the suppression court erred. The prosecution met its burden of proof regarding the voluntariness of the consent.

Appellee was given ample notice that the blood test results would be used for criminal investigation purposes. Indeed, Patrolman Sirisky's actions were exemplary. As noted above, he first determined from the examining physician that Walsh was conscious and alert. This was followed by a *Miranda* warning, information about the fatality,

questioning and finally an explanation of the consent form.[9] Only then did appellee sign the consent form.[10]

In the face of this uncontradicted testimony, we have no hesitation in concluding, as a matter of law, that appellee's consent to the blood test was valid. The order suppressing the results of the blood test is accordingly reversed. This case is remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

WIEAND, J., concurs in result.

---

9. The fact that the wording of the form was that of a standard medical consent form, rather than one printed for the precise purpose for which it was used, does not vitiate all of the other factors giving appellee notice.

10. We do not imply that all of these procedures would be necessary to provide a minimally sufficient level of notice. We merely conclude that this combination of actions was undoubtedly sufficient.