J-A08017-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ELMO PENA | |
| Appellee | No. 1452 EDA 2016 |

Appeal from the Order April 20, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): MC-51-CR-0013593-2015

BEFORE: PANELLA, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED JULY 21, 2017**

The Commonwealth of Pennsylvania appeals from the order, entered in the Court of Common Pleas of Philadelphia County, granting Elmo Pena's motion to suppress.[1]   We affirm.

On May 2, 2015, Police Officer Lorenz Hardy responded to a radio dispatch regarding an automobile accident.  Officer Hardy found Pena in his car, which was on the lawn of a residential property.  Pena was bleeding from his head, his speech was slurred and he smelled of alcohol.  He was transported to the hospital and treated for a concussion.

---

[*] Former Justice specially assigned to the Superior Court.

[1] The Commonwealth has certified in its notice of appeal that the suppression order will "terminate or substantially handicap the prosecution." **See** Pa.R.A.P. 311(d).

Approximately one hour later, Officer Daniel Shead went to the hospital and arrested Pena, charging him with driving under the influence, 75 Pa.C.S.A. § 3802(a)(1).[2] After Officer Shead obtained Pena's marking on the **O'Connell**[3] warnings form and his initials on the date line of the Report for Chemical Testing consent form, a nurse drew blood from Pena's left arm.

_____

[2] Section 3802(a)(1) provides:

(a)General impairment.—

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

[3] The **O'Connell** warnings were first announced in **Commonwealth, Department of Transportation, Bureau of Traffic Safety v. O'Connell**, 555 A.2d 873 (Pa. 1989). In a later opinion, our Supreme Court explained both the **O'Connell** warnings and the reasoning behind the warnings:

in order to guarantee that a motorist makes a knowing and conscious decision on whether to submit to testing or refuse and accept the consequence of losing his driving privileges, the police must advise the motorist that in making this decision, he does not have the right to speak with counsel, or anyone else, before submitting to chemical testing, and further, if the motorist exercises his right to remain silent as a basis for refusing to submit to testing, it will be considered a refusal and he will suffer the loss of his driving privileges[. T]he duty of the officer to provide the **O'Connell** warnings as described herein is triggered by the officer's request that the motorist submit to chemical sobriety testing, whether or not the motorist has first been advised of his Miranda rights.

**Commonwealth, Dep't of Transp., Bureau of Driver Licensing v. Scott**, 546 Pa. 241, 684 A.2d 539, 545 (1996).

Pena filed a motion to suppress the blood test results. Following a hearing, the suppression court granted Pena's motion. The Commonwealth appeal, and presents one issue for our review:

> Did the suppression court err by granting [Pena's] motion to suppress where he knowingly consented to a blood draw?

Appellant's Brief, at 4.

When a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights. **Commonwealth v. Wallace**, 42 A.3d 1040, 1047–1048 (Pa. 2012). **see also** Pa.R.Crim.P. 581(H).

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

**Commonwealth v. Miller**, 56 A.3d 1276, 1278–79 (Pa. Super. 2012) (citations omitted). "Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo r*eview over the suppression court's legal conclusions." **Commonwealth v. Brown**, 996 A.2d 473, 476 (Pa. 2010) (citation omitted).

- 3 -

At the suppression hearing, Officer Shead testified that he read Pena the *O'Connell* warnings, however, Pena neither reviewed them nor verbally responded that he understood them. N.T. Suppression Hearing, 8/13/15, at 41-42. Officer Shead acknowledged that "[Pena] just signed." *Id.* at 42. "He moved slightly. He wasn't up and about. Like I said, he was laying on a gurney. . . . I physically had to hold the forms in front of him so he could sign them." *Id.* Pena remained in the hospital for two days, and his discharge papers indicated he had suffered a concussion. *Id.* at 46. The suppression court found that Pena's head trauma and related injuries impaired his ability to understand, and, therefore, consent.

Based on our review of the parties' briefs, the record, and the relevant law, we agree with the suppression court's determination that the Commonwealth did not establish by a preponderance of the evidence that Pena gave either implied or actual consent to the blood draw. *See Wallace*, *supra*; *see also Commonwealth v. Eisenhart*, 611 A.2d 681, 684 (Pa. 1992) (conscious driver has explicit right under section 1547(b) to refuse blood draw). We, therefore, affirm the order granting suppression based on Judge Michael E. Erdos' opinion. The parties are directed to attach a copy of that opinion in the event of further proceedings.

Order affirmed.

Judge Panella joins the Memorandum.

President Judge Emeritus Stevens files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>7/21/2017</u>

THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA   :      MC-51-CR-0013593-2015
                                 :

                                 :

v.

**FILED**

**OCT 25 2016**


MC-51-CR-0013593-2015 Comm. v. Pena, Elmo
Opinion

Criminal Appeals Unit
First Judicial District of PA

ELMO PENA        7516834821        1452 EDA 2016

## OPINION

**ERDOS, J.**

On May 2, 2015, Elmo Pena (hereinafter "Appellee") was arrested and charged with Driving Under the Influence ("DUI") pursuant to 75 Pa.C.S. § 3802(a)(1). On August 13, 2015, the Honorable Gerard Kosinski of the Municipal Court granted Appellee's motion to suppress. On February 18, 2016, Appellant filed a Writ of Certiorari to Common Pleas Court. On April 20, 2016, this Court issued an Order denying Appellant's Writ of Certiorari, thereby affirming Appellee's motion to suppress. This Commonwealth appeal followed.

## FACTS

On May 2, 2015 at around 7:50 a.m., Officer Lorenz Hardy responded to a radio call for an automobile accident at 1102 Napfle Ave. in the City and County of Philadelphia. Notes of Testimony (N.T.) 8/13/15 at 7. The fire department and medic unit were on site when Officer Hardy arrived. N.T. 8/13/15 at 8. Officer Hardy observed Appellee sitting in the driver's seat of a car. N.T. 8/13/15 at 8-9. He saw tire tracks leading from Napfle Ave. across the lawn of a residential property, and up to the car Appellee was in. The car was positioned sideways in the driveway of the property. N.T. 8/13/15 at 11. Once the officer approached the vehicle he

1

observed Appellee bleeding from his head. N.T. 8/13/15 at 16. He then asked Appellee for his driver's license and registration. N.T. 8/13/15 at 9. Appellee's speech was slurred, his pupils were constricted, and his breath smelled strongly of alcohol. N.T. 8/13/15 at 11. Medical personnel evaluated Appellee for injuries and assisted him with exiting the car. N.T. 8/13/15 at 18. Appellee was placed in a neck brace and taken away on a gurney. N.T. 8/13/15 at 18. Medical personnel then took Appellee to Aria Torresdale Hospital to be treated for a possible concussion. N.T. 8/13/15 at 30.

AID Officer Shead first came into contact with Appellee at Aria Torresdale Hospital around 9:23 a.m. N.T. 8/13/15 at 34. The officer found him laying on a hospital bed in a neck brace. N.T. 8/13/15 at 38. Officer Shead and informed Appellee he had been arrested for DUI and asked him to submit to a chemical test. N.T. 8/13/15 at 35. Officer Shead then read Appellee the *O'Connell* Warnings and the 75-439 Report for Chemical Testing consent form. N.T. 8/13/15 at 35-36.

Appellee did not review the consent forms or respond to Officer Shead. N.T. 8/13/15 at 42. Officer Shead physically held the consent forms in front of Appellee for him to sign. N.T. 8/13/15 at 42. Appellee made a marking on the *O'Connell* Warnings and signed his initials on the date line of the 75-439 form. N.T. 8/13/15 at 27.

At 9:39 a.m., Officer Shead asked a nurse to draw blood from Appellee's left arm. N.T. 8/13/15 at 40. Neither Officer Hardy nor Officer Shead secured a warrant for the blood. N.T. 8/13/15 at 39. Two days later Appellee was discharged from Aria Torresdale Hospital. N.T. 8/13/15 at 46-47. Appellee's discharge paperwork stated he suffered a "concussion." N.T. 8/13/15 at 46.

2

# DISCUSSION

## I.    *Issue Raised*

The Commonwealth raises the following issue on appeal: Did the lower court, sitting as an appellate court, err in affirming the suppression ruling of the Municipal Court on the ground that a warrant was required to obtain blood for a chemical test notwithstanding the implied consent statute, where the police had probable cause to believe the defendant was driving under the influence of alcohol or a controlled substance and he did not withdraw consent?

## II.    *Standard of Review*

At the outset, we examine the pertinent standard of review. While the appellate court defers to the suppression court's findings of fact, the suppression court's conclusions of law are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts. *Commonwealth v. Hudson*, 92 A.3d 1235, 1241 (Pa. Super. 2014).

## III.    *Analysis*

The taking of blood constitutes a search subject to the provisions of the Fourth Amendment of the U.S. Constitution and Article I, Section 8 of the Pennsylvania Constitution. *Schmerber v. California*, 384 U.S. 757 (1966); *Commonwealth v. Davenport*, 308 A.2d 85, 87 (Pa. 1973). The Pennsylvania Supreme Court has held that exceptions to the warrant requirement exist to negate the necessity of obtaining a warrant before conducting a search. *Commonwealth v. Riedel*, 651 A.2d 135, 139 (Pa. 1994). Exceptions to the warrant requirement include actual consent, implied consent, and exigent circumstances. *Id.*

Consent must be voluntary and knowing for it to operate as a valid waiver of the right to remain free from warrantless searches. *Commonwealth v. Walsh*, 460 A.2d 767, 771-72 (Pa. Super. 1983). Whether consent to a search was voluntary is a question of fact to be determined

3

from the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973).

Circumstances including the subjectively vulnerable state of the person whom consents should

be examined to determine if the consent was coerced. *Id.* at 229. In addition, consent can be

invalidated if the consenting person did not understand what it was he was consenting to. *Walsh*,

460 A.2d at 772.

The Commonwealth argues that a warrant was not required to draw blood from Appellee

due to the implied consent statute. Pennsylvania's implied consent statute provides that:

> Any person who drives, operates or is in actual physical control of the
> movement of a vehicle in this Commonwealth shall be deemed to have
> given consent to one or more chemical tests of breath or blood for the
> purpose of determining the alcoholic content of blood or the presence of a
> controlled substance if a police officer has reasonable grounds to believe
> the person to have been driving, operating or in actual physical control of
> the movement of a vehicle: (a)(2) which was involved in an accident in
> which the operator or passenger of any vehicle involved or a pedestrian
> required treatment at a medical facility or was killed.

75 Pa.C.S.A. § 1547(a)(2). "If any person placed under arrest for a violation of Section 3802 is

requested to submit to chemical testing and refuses to do so, the testing shall not be conducted

but upon notice by the police officer, the department shall suspend the operating privilege of the

person . . . ." 75 Pa.C.S.A. § 1547(b)(1). In addition, if the refusing individual is subsequently

convicted he faces increased criminal penalties. 75 Pa.C.S.A. § 3804(1).[1]

---

[1] The Supreme Court of the United States recently struck down a similar implied consent

provision from North Dakota, finding that leveraging criminal penalties to induce a driver to

consent to a blood draw is unconstitutionally coercive and vitiates consent. *Birchfield v. North*

*Dakota*, 136 S.Ct. 2160 (2016). Although, because of his physical condition, Appellee in the

4

The Pennsylvania Superior Court recently addressed this issue and Section 1547 in *Commonwealth v. Myers.* 118 A.3d 1122 (Pa. Super. 2015). In *Myers*, the defendant was rendered unconscious after taking antipsychotic medication a few minutes before the AID Officer arrived. *Id.* at 1124. The officer attempted to make contact with the defendant by speaking his name and tapping him on the shoulder, but there was no response. *Id.* at 1130. The officer proceeded to give the defendant the informed consent warnings but still received no response. *Id.* The blood draw was conducted anyway. *Id.*

The defendant in *Myers* contended that he was deprived of his statutory right to refuse a blood draw and police could not then use his inability to verbally refuse as the basis to involuntarily take his blood. *Id.* at 1129. The court in *Myers* agreed, finding that although Pennsylvania's implied consent law penalizes the refusal to consent to a blood draw, it does not permit the involuntary seizure of a blood sample. *Id.* Under *Myers*, then, the blood draw here cannot be justified under Section 1547.

Nor did Appellee provide actual consent. In *Commonwealth v. Smith*, the Pennsylvania Supreme Court found a DUI suspect's consent knowing and voluntary because he had full use of his faculties when he gave consent to submit to chemical testing. 77 A.3d 562 (Pa. 2013). The suspect hit a car and seriously injured its occupants one morning after drinking the night before. Police arrived on scene and asked the driver if he would agree to submit to a chemical test. *Id.* at 223. The driver agreed and upon receiving the results, the police arrested and charged him with DUI. *Id.* On appeal, the driver argued that the police did not obtain informed and actual consent.

---

instant matter could not understand what the officers told him concerning consent, it is arguable that the entire implied consent statute in Pennsylvania is invalid under *Birchfield*.

5

*Id.* The court based its holding on the education level of the driver, his physical health, his knowledge of the right to refuse, and his understanding that the test was to rule out the possibility of alcohol or drugs. *Id.* The court found, given the totality of the circumstances, that the driver's consent was knowing and voluntary.

The case at bar differs from *Myers* with respect to the defendants' levels of consciousness. Appellee was awake and responsive during his interaction with Officer Shead, unlike the defendant in *Myers*. However, Appellee suffered visible head trauma from the car crash. During his meeting with Officer Shead, the record demonstrates Appellee, like *Myers*, was unable to understand the standard informed consent warnings or give a knowing and voluntary consent. N.T. 9/30/15 at 27. Therefore, Appellee did not legally consent to the taking of his blood.

The circumstances the court relied on in *Smith* are not present in this case. Appellee's health was drastically affected by the car accident. Due to his incapacity, he did not have the requisite knowledge of the right to refuse nor the understanding that the chemical test was to examine his blood for the presence of alcohol. The medical evidence accepted by the suppression court is dispositive. That court found that Appellee suffered head trauma from the crash. The police officers and medical personnel testified that he had lacerations on his head and visibly constricted pupils. N.T. 8/13/15 at 29-30. Appellee was unable to sit up or review the consent forms, which Officer Shead had to hold in front of Appellee's face. His disoriented state is further demonstrated by his inability to correctly sign the implied consent forms. He initialed one consent form on the date line and made a marking on the second form. He did not respond to Officer Shead when read his rights. N.T. 9/30/15 at 27-28.

6

Given these facts, it is apparent Appellee's head trauma and related injuries impaired his ability to comprehend the risks involved with a chemical test. Appellee did not knowingly and voluntarily submit to a chemical test. Furthermore, there is no indication that the officers could not have obtained a warrant before drawing Appellee's blood. There was ample time for them to secure a valid warrant during traditional business hours. In addition, the United States Supreme Court has held the natural dissipation of alcohol in the bloodstream does not present an exigent circumstance in a drunk-driving investigation to render a warrantless search valid. *See Missouri v. McNeely*, 133 S.Ct. 1552, 1568 (2013). Therefore, there is no exception to render the warrantless seizure of Appellee's blood permissible.[2]

## CONCLUSION

In light of the applicable statutes, testimony, and case law, this Court did not err in affirming the Municipal Court suppression ruling. Accordingly, this Court's decision should be affirmed.

BY THE COURT:

MICHAEL E. ERDOS, J.

DATE: October 25, 2016

---

[2] Again, even had Appellee given consent, it would have been vitiated under *Birchfield*.

7